CONNIE SUE MARTIN
AKSB #2202017
Email: csmartin@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Facsimile: 206-292-0460

Attorneys for Plaintiff VILLAGE OF DOT LAKE, a federally recognized Indian tribe

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| VILLAGE OF DOT LAKE, a federally recognized Indian tribe,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; and LIEUTENANT GENERAL SCOTT A. SPELLMON, in his official capacity as Chief of Engineers and Commanding General, United States Army Corps of Engineers,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, by and through its undersigned attorneys, alleges on information and belief as follows:

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 1 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 1 of 43

# INTRODUCTION

1.     This case arises from the failure of the United States Army Corps of Engineers ("Corps") to consult with the Village of Dot Lake ("hereinafter, "Dot Lake" or "The Tribe") regarding the Manh Choh Mine, and the Corps' failure to undertake an adequate environmental review of the significant impacts posed by the Manh Choh Mine as required by the National Environmental Policy Act ("NEPA") and the duties owed by the Corps to the Tribe to protect tribal lands, assets, and resources.

2.     Kinross Gold Corporation and Peak Gold LLC are developing an open pit gold mine, the Manh Choh Mine, approximately 10 miles south of Tok, Alaska, in the Upper Tanana Athabascan Village of Tetlin, on land leased by the Village of Tetlin to Peak Gold LLC ("the Project"). Numerous state, federal, and local government permits and approvals are required for the development and operation of a large hardrock mine in Alaska, including permits from the Corps.

3.     The Corps failed to properly analyze the Project's impacts on the Dot Lake's resources and rights, the taking of fish and wildlife for subsistence uses, and the potential impact of the Project on the health, safety and welfare of tribal members at the mine site and in the path of the mine haul route. The Corps failed to undertake an adequate environmental review of the significant impacts posed by the Project as required by NEPA and the duties owed by the Corps to Dot Lake to protect tribal lands, assets, and resources.

4.     In approving the Project the Corps also failed to consult with Dot Lake and other tribes in the region in violation of laws and policies that bind the Corps.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 2 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

5. The Corps' approval was therefore arbitrary, capricious, and not in accordance with the law.

6. Because of the many procedural and substantive failings by the Corps, the permits issued by the Corps should be rescinded, and further permitting decisions stayed pending meaningful consultation between the Corps and the Tribe; and the Corps must undertake the requisite hard look at the direct, indirect and cumulative impacts of the Project on the Tribe, its resources, and its subsistence uses through the completion of an Environmental Impact Statement ("EIS") with the Tribe included as a cooperating agency, including the preparation of a Health Impacts Assessment.

## JURISDICTION AND VENUE

7. This action arises under the Administrative Procedures Act ("APA"). 5 U.S.C. §§ 701-706. The APA waives Defendants' sovereign immunity and these actions are against the law, beyond Defendant's authority, and therefore sovereign immunity does not apply. Id. § 702.

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 706.

9. Jurisdiction also is proper pursuant to 28 U.S.C. § 1362, which provides that "district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 3 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

of the United States."

10. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202, and its inherent authority to issue equitable relief. Injunctive relief also is authorized for APA claims pursuant to 5 U.S.C. §§ 705-706.

11. Venue is proper pursuant to 28 U.S.C. § 1391 because the actions challenged herein took place in the state of Alaska in this judicial district.

**THE PARTIES**

12. Plaintiff VILLAGE OF DOT LAKE ("Dot Lake" or the "Tribe") is a federally recognized Indian Tribe in the Southeast Fairbanks Census Area of Alaska. 89 Fed. Reg. 944, 948 (Jan. 8, 2024). Dot Lake is located on the Alaska Highway south of the Tanana River, 50 miles northwest of Tok, and 155 road miles southeast of Fairbanks. Its location on Alaska Highway subjects it to the increased truck traffic from the Project, with multiple trucks per day driving at high speeds past the school, playground, chapel, and homes that are located as close as 150 feet from the roadway.

13. Defendant UNITED STATES ARMY CORPS OF ENGINEERS (the "Corps") is a federal agency. The Corps has authority over work on structures in navigable waterways under Section 10 of the Rivers and Harbors Act of 1899 and over the discharge of dredged or fill material under Section 404 of the Federal Water Pollution Control Act Amendments of 1972 (P.L. 92-500). Without engaging in consultation with

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS*
*OF ENGINEERS*
Case No. _____ – Page 4 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 4 of 43

the Tribe, the Corps issued wetlands fill permit number POA-2013-00286 to Peak Gold LLC allowing the fill of 5.2 acres of wetlands and waters of the United States (WOTUS) to facilitate open-pit gold mining.

14.     Defendant LIEUTENANT GENERAL SCOTT A. SPELLMON serves as the Chief of Engineers and the Commanding General of the United States Army Corps of Engineers and is sued in his official capacity. LTG Spellmon is the federal official with the ultimate authority and responsibility for ensuring the Army Corps' compliance with federal laws, including the ESA and the APA, and LTG Spellmon has authority to grant, at least in part, the relief requested in this Complaint.

15.     Collectively, the Corps and Lt. General Spellmon are referred to as "Defendants."

16.     Plaintiff brings his claims for injunctive and declaratory relief against each of the Appointed Defendants and both of them in the official capacities of their respective titles above.

17.     To the extent any conduct alleged herein was undertaken by a subordinate or delegee of any of the Appointed Defendants, such conduct was taken with the relevant Appointed Defendants' actual knowledge, their constructive knowledge, or both.

## FACTUAL BACKGROUND

18.     The Project mine design includes two open pits, Manh Choh North and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE v. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 5 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Manh Choh South, which will be mined with conventional open pit mining equipment. The Project includes waste rock storage areas, ore stockpile and load-out facilities, and related surface infrastructure and support buildings. The Project is expected to have an active mine life of four to five years. Mining activity will occur year-round, seven days per week, twenty-four hours a day.

19. Pre-production mining commenced in the third quarter 2023, followed by first ore delivered to the Fort Knox processing facility in January 2024. Construction commenced on August 29, 2023 with a commemorative groundbreaking ceremony. Production is expected to commence in the second half of 2024.

**A.** **Mine Site Impacts**

20. The includes development of two gold mine sites within the Tetlin Hills, located approximately 12 miles west from the Upper Tanana Athabascan Village of Tetlin, Alaska, and approximately 10 miles south of the town of Tok.

21. The mine site is situated on top of a group of low hills in the northern part of a lease between Tetlin and Peak Gold LLC. Access to the mine sites requires two gravel roads, the Manh Choh Twin Road and the Manh Choh Site Road, both on Tetlin Land.

22. Both proposed mining pits sit atop a ridgeline in the Tetlin Hills and shed surface and ground waters via runoff and perennial streams to both the Tok River

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE v. UNITED STATES ARMY CORPS*
*OF ENGINEERS*
Case No. _____ – Page 6 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

watershed to the west and the Tetlin Lake watershed to the east.

23.    The ore is potentially acid generating (PAG) and non-acid generating (NAG). The ore will be temporarily stored onsite before being loaded into trucks for transport to Fort Knox for processing.  Harmful compounds like mercury, arsenic, and acid can be present in mined rock and present risks for human health and environmental degradation.

24.    Waste rock includes portions of material that is PAG and metal leaching (ML). PAG rock, when oxidized by weathering, may form acid which can be harmful to aquatic life. ML rock can leach metal ions which can be harmful to aquatic life.  The applicant's own analysis of 96 waste rock samples showed that 83% of all oxide materials are classified as PAG and there is a potential for rapid onset of acidification of PAG in 35% of the QMS oxides and 68% of the skarn oxides.  There is the potential for adverse impacts to downgradient waters of the United States (WOTUS) from pit seepage and groundwater altered by contact with PAG waste rock.

25.    All types of waste rock showed some degree of elevated arsenic relative to a reference value of 10 times average global abundance for shale; highest concentrations occur in the skarn oxides and sulfides. The Corps did not adequately assess the potential for arsenic leaching into the ground and perennial surface streams, and from there potentially into Tetlin Lake and Tok River.

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

26. Other parameters which were elevated in at least some of the waste rock samples were: silver, cadmium, cobalt, copper, lead, selenium. These and other metalloid chemicals in the ore, including arsenic, become toxic to living things, especially fish and other aquatic life, and can persist for many years in lakes and ponds receiving the runoff where these chemicals concentrate.

27. Proposed waste rock piling is likely to result in weathering and leeching of harmful compounds into WOTUS. These toxic chemicals may pose a risk to human health by cumulatively biomagnifying throughout the food web and eventually affecting humans through consumption of subsistence foods.

28. Perennial streams in the project vicinity will be subject to increased transport of dissolved arsenic during and after mining activities under the applicant's plans for water and waste rock management. Allowing for the discharge of polluted, contact water to groundwater has the potential to cause or contribute to water quality exceedances in downgradient WOTUS that already have recorded water quality exceedances on multiple occasions. For example, Tors Creek, which drains east to Tetlin Lake, and Hillside Creek, which drains west to Tok River, have recorded levels of pH, alkalinity, arsenic, aluminum, lead, and manganese in exceedance of ADEC water quality standards due to existing interactions between groundwater, the ore body, and the discharge of that groundwater into these streams.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*Village of Dot Lake v. United States Army Corps of Engineers*
Case No. _____ – Page 8 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 8 of 43

29.     The Tanana and Tok Rivers have their headwaters in mountain streams in eastern Alaska near the Yukon border. The Tanana River flows northwest to meet with the Delta River, a Wild and Scenic River, before joining the Yukon River across the state. The upper Tanana River is a critical reach of the river system, along with the confluence with Tok River, and Tetlin Lake as they serve important functions for wildlife, fisheries, subsistence, and recreation. This reach is where fish and wildlife migrate to reproduce seasonally.

30.     The areas of the Upper Tanana River Valley through the Tetlin National Wildlife Refuge (TNWR) are known for being a migratory corridor from numerous species of protected birds, including but not limited to the Bald Eagle, Golden Eagle, Hudsonian Godwit, Lesser Yellowlegs, and Olive-sided Flycatcher.

31.     Alaska recognizes any fish-bearing waterbody as essential fish habitat regardless of species and life stage. National Marine Fisheries Service (NMFS) considers all freshwaters classified anadromous waters as essential fish habitat but defers to the Alaska Anadromous Waters Catalog (AWC) for classifications.

32.     According to the AWC, the Tanana River in the vicinity of Tok and Tetlin supports Coho salmon. The Upper Tanana River has known populations and subsistence fishing of Arctic Grayling, Burbot, Lake Trout, Northern Pike, and Whitefish.  The TNWR is a highly used area for numerous protected species, some which are highly

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

migratory. Humpback Whitefish have been observed moving between the TNWR and downstream areas of the Tanana River to spawn.

33.     The TNWR has recorded small runs of chum salmon and an occasional chinook and coho. Based on the life histories of salmonid species, it is logical to presume these species use the downstream reaches of the Tanana River as well.

34.     The Project has the potential to result in indirect and cumulative impacts to water quality in the Tok and Tanana River watersheds from the additional haul traffic, potential accidents involving mine ore, fugitive dust from trucks, and releases of small tire particles containing 6PPD-quinone, which may contribute to exceedances of water quality standards related to metals and fish toxicity.

35.     The TNWR, which was established in 1980 to conserve fish and wildlife populations and habitats in their natural diversity to provide subsistence hunting opportunities, is located about 20 miles east of the project site in the Tetlin River/Manh Choh Lake watershed.

36.     The TNWR is visited by thousands of migratory birds each spring and fall, its lands provide wetlands and waterbodies needed to rest and renew calorie stores for species on their way to the Arctic and beyond. In particular, the Trumpeter Swan (Cygnus buccinator), Lesser Scaup (Aythya affinis), Mallard (Anas platyrhynchos), and Whimbrel (Numenius phaeopus) use the aquatic resources of the refuge and surrounding lands.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 10 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

37. The TNWR's close proximity and its downstream location from the proposed mine site potentially expose it to secondary effects of the mine operation and transport of ore. Such exposures include increased intensity and duration of noise, fugitive dust, and/or accumulation of leachate where groundwater discharges into waterbodies.

38. Managing humpback whitefish (Coregonus pidschian) is one of the TNWR's management goals to conserve fish and wildlife populations representative of the natural diversity of the Upper Tanana Valley and boreal forest ecosystem. The TNWR provides two significant spawning areas for humpback whitefish within the Refuge: one on the Nabesna River and the other on the Chisana River, as well as several important fishing areas. Two other whitefish species are known to occur on the refuge: round whitefish and least cisco, collectively referred to as whitefish, but humpback white fish are the primary subsistence fishery within the Refuge.

39. Humpback whitefish migrate to spawning areas in braided regions of the lower Nabesna River and the Chisana River near the mouth of Scottie Creek on the TNWR, and subsequent migrations downstream into the Tanana River and then for many, up the Tetlin River to overwintering habitat in Tetlin Lake. This is a major fishery resource, one that people in the upper Tanana River cannot afford to lose or have adversely impacted through contamination or other environmental impacts.

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

40.     Subsistence uses by local residents was one of the purposes for establishing the TNWR (Section 302(4)(B) of the Alaska National Interest Lands Conservation Act), and humpback whitefish are the major fish species targeted for subsistence in and adjacent to the TNWR. Although tribal members harvest a variety of fish and game; whitefish and moose make up the majority of the harvest each year.

41.     Whitefish are harvested throughout the summer while moose are harvested primarily in the fall.  Residents depend on their whitefish catch and moose harvest to make it through the winter. Most subsistence fishing is done by families from the communities of Northway and Tetlin. Additional fishing takes place in the Tetlin River upstream from Tetlin Lake as well, in the seasonal camp called Last Tetlin.

42.     Toxicants from the proposed mine may enter downstream waters and habitats.  There are significant risks of groundwater infiltration from PAG waste rock leachate from on-site or dispersion of PAG fugitive dust from Project Site operations and uncovered waste rock dumps.  Water quality in several downgradient waterbodies is already degraded by high background levels of chemicals associated with the ore body. Increased exposure of groundwater through mining activities will only add to concentrate levels downstream.

**B.      Haul Route Impacts**

43.     The ore from the Project will not be processed at the Project site.  Instead, it

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 12 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

will be hauled 248 miles to the Fort Knox gold mine east of Fox, along the Alaska Highway from Tetlin to Delta Junction, the Richardson Highway from Delta Junction to the Mitchell Expressway, the Mitchell Expressway to Peger Road, Peger Road to the Johansen Expressway, the Johansen Expressway to the Steese Expressway, the Steese Expressway to the junction with the Elliott Highway, and the Steese Highway from the Elliott Highway junction to the Fort Knox Road junction. The route crosses several bridges including two close to Dot Lake that were built in WWII and are currently on the State of Alaska Department of Transportation's "Replace List".  This route passes directly past Dot Lake.

44.     The Project will impact additional WOTUS along the haul route that were neither disclosed nor evaluated by the Corps.

45.     The Project is using "B-Trains" – a tractor hauling double trailers – which are 95' long and approximately 85 tons gross weight.

46.     Trucks will run every 12 minutes, 24 hours a day, 365 days a year for approximately five years or longer.  The Alaska Department of Transportation (ADOT) has taken the position that there is no permit required for the Project's use of state highways with that number and size of trucks.

47.     The Project has already started hauling ore along the haul route, which is being documented by Dot Lake residents and the Tribe's camera system. The Tribe also

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 13 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 13 of 43

has documented ore bouncing out of the B-Trains into the environment with disturbing regularity.

48.     There are significant public health and safety risks to homes and structures along the haul route, schoolchildren and school buses, and tribal members who travel the highway associated with the size and number of trucks speeding past the Dot Lake every day.

49.     There is also a significant concern about bridge safety and the risk that either or both the Johnson and Robertson bridges may collapse, closing the only access point in one or more directions and leaving the residents of Dot Lake completely cut off. Man Camps are another significant impact of the Project that has received no attention from the regulatory agencies.

50.     Increased traffic with mine haul trucks will increase noise for residents and migratory birds, creates the potential for vehicle accidents, and will cause impacts to WOTUS near the roads from fugitive dust.

51.     The highway infrastructure will require maintenance and potentially upgrades during operation, which may increase in frequency and need due to the proposed hauling.

52.     Studies of other similar ore transport has shown particulate contamination up to 328 feet (100 meters) from the roadbed, risking contamination to adjacent

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 14 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

waterbodies important for subsistence fisheries and waterfowl. Residue from vehicle bodies and wheels of covered trucks are vectors which deposit mine contaminants along haul routes. Studies along the Red Dog haul road in northwest Alaska showed that despite truck covers, contaminants still concentrated in the transport route roadbed at 6 to 12 times the ambient background levels, and fugitive dust dispersal from covered trucks as far away as 25 kilometers (15.5 miles), likely transported on wheel wells, tires, underbeds, and other external features of the trucks.

53. The route between the Tetlin transfer area and Fort Knox will intersect multiple wetlands and streams important to species that rely upon uncontaminated sources of forage and water for critical stages in their lifecycles. The contamination risk from fugitive dust to trust species habitats adjacent to this haul route will be substantial during the life of the Project.

54. The haul route will direct trucks through an airshed that has been formally designated by EPA as "Serious" Nonattainment for exceedances of the National Ambient Air Quality Standards (NAAQS). A portion of the Fairbanks North Star Borough, including the City of Fairbanks and the City of North Pole, was designated as a Nonattainment Area for Particulate Matter (PM2.5) in December 2009 because these areas exceed the health based 24-hour PM2.5 NAAQS of 35 micrograms/cubic meter. According to Alaska Department of Environmental Conservation (ADEC), particulate

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 15 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

pollution in this area is the result of local emissions from emissions from wood stoves, burning distillate oil, and industrial sources, as well as motor vehicles and trucks.

55.     Emissions that originate from gasoline and diesel engines, primarily motor vehicles, contribute to these PM2.5 concentrations. The drastic increase in annual average daily traffic from this Project is likely to have an adverse effect on the air quality in the nonattainment area.

56.     The distance and route taken to the processing facility is a critical aspect in siting this project and should have been evaluated by the Corps in assessing the environmental impacts of the Project.

**C.     <u>Man Camp Impacts</u>**

57.     The Extractive Ore Industry and the "Man Camps" they create increase the populations in relatively small areas/communities which puts significant strains on local social infrastructure.

58.     These camps have also been shown to show significant harm to local native populations where they have been implemented.

59.     Man Camps bring violence and crime in places where crime would not be otherwise.[1]

---

[1] University of Colorado: https://www.colorado.edu/program/fpw/2020/01/29/violence-extractive-industry-man-camps-endangers-indigenous-women-and-children

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 16 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 16 of 43

60. These camps place a strain on community infrastructures such as law enforcement, healthcare, emergency medical services and other social services that we depend on. Tribes already experience slow law enforcement responses, or no response at all, due to a lack of law enforcement in the region. Alaska law enforcement officers are already tasked with providing services to a vast area including tribes and communities.

61. "The presence of man camps on Indigenous land has been anything but benign. The US Department of State's Office to Monitor and Combat Trafficking in Persons noted that sex trafficking has increased near oil extraction camps."[2] This recent publications cite a direct contribution to the number of Missing and Murdered Indigenous Women being related to Man Camps. There are data suggesting that Man Camps located in communities in Canada and the Lower 48 result in as much as 70% increase in human trafficking, prostitution, domestic violence, substance abuse, and similar crimes. Indigenous women and children disproportionately suffer the brunt.

62. In 2019 the U.S. Bureau of Justice statistics completed a study on violent victimization known to law enforcement, where increased reports of crime coincided with the socioeconomic changes brought on by extractive industries. Violent victimization increased by 67-70%, with Native Americans experiencing a rate 2.5 times higher.

---

[2] https://acrobat.adobe.com/link/track?uri=urn:aaid:scds:US:ea887259-d56d-4453-888c-d5cdb883ff73; https://perma.cc/TSL5-AKJD

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 17 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

63.     Women as a whole experienced a 54% increase in the rate of unlawful sexual contact, which was due to a rise in reports of statutory rape. Alaska has the highest rates for missing, murdered indigenous women. According to a 2018 report by the Violence Policy Center, Alaska had the highest rate of women murdered by men in the United States. Alaska has often been ranked among the states with the highest rates of violent crime in the United States. This includes crimes such as murder, rape, robbery, and aggravated assault.

64.     When it comes to crimes against women specifically, Alaska has faced significant challenges. Factors such as high rates of alcohol and drug abuse, remote and isolated communities, poverty, and a lack of law enforcement resources in some areas contribute to the complex dynamics surrounding crime. Ninety-six percent of Alaskan native women experience violence in their lifetime. With the lack of judicial resources and law enforcement, adding in remote workers for a mining operation will create a potentially deadly situation for the many women in the region.

65.     The Manh Choh Mine Project presents a number of unique problems. While the mine is in Tetlin, Alaska, the Man Camp are not. In particular, Cantango/Kinross purchased a hotel in Tok, Alaska for its Man Camp servicing the mine operations. Tok is a community of approximately 1,500 people, located on the Alaska Highway. The Man Camp will house mine workers who will commute to the Tetlin mine

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 18 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

site, as well as some Black Gold Transport staff. There is a second man camp owned and

operated by Black Gold, the ore hauling contractor. This camp is located in North Pole, a

community on the highway outside of the City of Fairbanks, but within the Fairbanks

North Star Borough.

66.     While Alaska has substantial experience with Man Camps associates with

pipeline construction and mining, those Man Camps have been located in remote areas at

substantial distance from communities and most often off the road system. The

Cantango/Kinross Man Camp will be one of first large scale industrial man camps

operated in an Alaskan community on the road system, with impacts that have not been

evaluated. As a policy matter, all impacts to the surrounding communities should be

considered when the Corps is issuing a permit and these impacts should consider whether

a man camp will be required to develop the project and then provide for adequate

mitigation measures.

**C.     <u>Failure to Consult</u>**

67.     The Corps issued permits for Peak Gold LLC's proposal "to profitably

produce gold from land owned by the Native Village of Tetlin utilizing open-pit mining

methods. . ." It is clear from the administrative record that the Corps failed meaningfully

to consult with Dot Lake and other tribes that are impacted by the Manh Choh Mine

Project.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 19 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 19 of 43

68.     Rather than affirmatively consulting with tribes as law and policy requires, the Corps, its January 13, 2022 permitting public notice, stated:

TRIBAL CONSULTATION:  The Alaska District fully supports tribal self-governance and government-to-government relations between Federally recognized Tribes and the Federal government. Tribes with protected rights or resources that could be significantly affected by a proposed Federal action (e.g., a permit decision) have the right to consult with the Alaska District on a government-to-government basis. Views of each Tribe regarding protected rights and resources will be accorded due consideration in this process. This Public Notice serves as notification to the Tribes within the area potentially affected by the proposed work and invites their participation in the Federal decision-making process regarding the protected Tribal right or resource. Consultation may be initiated by the affected Tribe upon written request to the District Commander during the public comment period.

69.     At Dot Lake Village's request, the Corps, through its Acting Assistant for Regulatory and Tribal Affairs, Office of the Assistant Secretary of the Army for Civil Works and its Alaska District Tribal Liaison, met with the Tribe in December 2023 to discuss the Tribe's concerns about the Project and the Corps' failure to consult.

70.     The Tribe memorialized its concerns in an April 18, 2024 letter to Jaime A. Pinkham, the Principal Deputy Assistant Secretary, Army Corps of Engineers Civil Works and formally requested that request that the Corps require the cessation of ongoing activity and take no further action on its consideration of permitting the Manh Choh Mine until it engaged in formal consultation with the Tribe, and undertakes the requisite hard look at the direct, indirect and cumulative impacts of the Project on the Tribe and its resources through the completion of an EIS with the Tribe included as a cooperating agency.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS*
*OF ENGINEERS*
Case No. _____ – Page 20 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 20 of 43

71.     On May 30, 2024 the Corps and the Tribe engaged in a virtual, web-based government-to-government meeting.  The Tribe expressed its concerns regarding the Corps' failure to consult and the Corps' failure to evaluate the impacts of the Project.

72.     The Tribe requested that the Corps rescind Permit No. POA-2013-00286 and stay any further permitting decisions pending meaningful consultation with the Tribe consistent with federal law and the Corps' own policies.

73.     The Tribe also requested that the Corps undertake the requisite hard look at the direct, indirect and cumulative impacts of the Project on the Tribe and its resources through the completion of an EIS with the Tribe included as a cooperating agency.

74.     The Corps sent a letter to the Tribe dated on June 20, 2024 to respond to the issues raised by the Tribe during the May 30, 2024 government-to-government meeting and those identified in a September 1, 2023 letter to Colonel Jeffrey S. Palazzini, the Alaska District Commander, from the Tribe.  The letter did not respond to the Tribe's April 18, 2024 letter to Principal Deputy Assistant Secretary Pinkham.

75.     The Corps reiterated its position that it had appropriately limited the scope of its environmental review to the wetlands to be filled at the mine site, ignoring the indirect impacts of the haul route, discharges to downstream WOTUS, and the man-camps which would not occur but for the Corps' approvals.

76.     The Corps failed to offer any remedy for its admitted failure to engage in

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 21 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 21 of 43

meaningful consultation with the Tribe in violation of federal law and the Corps' own rules and guidance.

77.    The Corps denied the Tribe's requests to rescind Permit No. POA-2013-00286, stay further permitting decisions pending meaningful consultation with the Tribe, and undertake the requisite hard look at the direct, indirect and cumulative impacts of the Project on the Tribe and its resources through the completion of an EIS with the Tribe included as a cooperating agency.

## LEGAL BACKGROUND

### A.    The National Environmental Policy Act

78.    The National Environmental Policy Act ("NEPA") requires an environmental impact statement (EIS) to be prepared for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An environmental assessment ("EA") is made for the purpose of determining whether an EIS is required. *See* 40 C.F.R. § 1508.9. "If any 'significant' environmental impacts might result from the proposed agency action then an EIS must be prepared before agency action is taken." *Sierra Club v. Peterson*, 230 U.S. App. D.C. 352, 717 F.2d 1409, 1415 (D.C. Cir. 1983).

79.    NEPA requires that each agency "shall . . . [i]dentify environmental effects and values in adequate detail so the decision maker can appropriately consider such

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 22 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

effects and values alongside economic and technical analyses. . . ." 40 C.F.R. § 1501.2(b)(2).

80. In enacting NEPA, Congress found that "[i]t is the continuing responsibility of the Federal Government to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may . . . attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences. . ." 42 U.S.C.S. § 4331(b)(3).

81. The procedural requirements prescribed in NEPA and its implementing regulations are to be strictly interpreted "to the fullest extent possible" in accord with the policies embodied in the Act. 42 U.S.C. § 4332(1). "Grudging, *pro forma* compliance will not do." *Lathan v. Brinegar*, 506 F.2d 677, 693 (9th Cir. 1974).

82. The Council on Environmental Quality ("CEQ") has adopted regulations that govern agencies' responsibilities under NEPA. *Sierra Club, Inc. v. Bostick*, 787 F. 3d, 1043, 1063 (10th Cir. 2015) (concurring opinion). The CEQ regulations, which are entitled to substantial deference, impose a duty on all federal agencies. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 372, 104 L. Ed. 2d 377, 109 S. Ct. 1851 (1989) (citations omitted).

83. The CEQ regulations define each term within NEPA's requirement of an

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 23 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 23 of 43

EIS for "every … major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1502.3.  The term "significantly" is defined as those actions "with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment."  40 C.F.R. § 1508.27(b)(7).

84.    "Cumulative impact," in turn, is defined as:

> [T]he impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. 40 C.F.R. § 1508.7.

85.    NEPA requires agencies to analyze "any adverse environmental impacts which cannot be avoided should the proposal be implemented." 42 U.S.C. § 4332(2)(C)(ii). These impacts include "direct" and "indirect" environmental effects of the project under consideration. 40 C.F.R. § 1502.16(b).  Indirect effects are "caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable." *Id*. § 1508.8(b).  *See* 40 C.F.R. § 1502.16(b).

86.    Indirect and direct effects are both "caused by the action," but direct effects occur "at the same time and place" as the proposed project, while indirect effects occur "later in time or [are] farther removed in distance." *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 737 (9th Cir. 2020) quoting 40 C.F.R. § 1508.8(a), (b).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*Village of Dot Lake v. United States Army Corps of Engineers*
Case No. _____ – Page 24 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 24 of 43

87.     Effects are reasonably foreseeable if they are "sufficiently likely to occur that a person of ordinary prudence would take [them] into account in reaching a decision."  *Sierra Club v. FERC*, 432 U.S. App. D.C. 326, 340, 867 F.3d 1357, 1371 (2017), quoting *EarthReports, Inc. v. FERC*, 828 F.3d 949, 955, 424 U.S. App. D.C. 127 (D.C. Cir. 2016) (citation omitted).

88.     In requiring evaluation of indirect effects, "the statute does not demand forecasting that is not meaningfully possible, [but] an agency must fulfill its duties to the fullest extent possible."  *Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1310, 410 U.S. App. D.C. 137 (D.C. Cir. 2014) (quotation marks omitted).

89.     An EIS that does not adequately consider the indirect effects of a proposed action violates NEPA.  *Ctr. for Biological Diversity v. Bernhardt*, 982 F.3d 723, 737 (9th Cir. 2020).  Without an analysis of the indirect, downstream effects of a proposed project, the EIS fails to foster the informed decision-making required by NEPA. *California v. Block*, 690 F.2d 753, 761 (9th Cir. 1982).

90.     An agency impermissibly "segments" NEPA review when it divides connected, cumulative, or similar federal actions into separate projects and thereby fails to address the true scope and impact of the activities that should be under consideration. *Del. Riverkeeper Network v. FERC,* 753 F.3d 1304, 1313 (2014).

91.     The project purpose of the Project is "to profitably produce gold from land

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 25 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 25 of 43

owned by the Native Village of Tetlin utilizing open-pit mining methods. . ." not simply

to fill wetlands. The ore mined for the Project will not be processed at the Project site.

Instead, it will be hauled 248 miles to the Fort Knox gold mine east of Fox. Without the

haul route, the project purpose of profitably producing gold is not met. Without the haul

route and the man camps, there is no need for a fill permit from the Corps. By willfully

ignoring the clear indirect effects of the project purpose of the proposed action and

limiting the geographic scope of its review to the wetlands that will be filled on the

Project site, the Corps impermissibly segmented its review in violation of NEPA.

92.     Although federal agencies have discretion to decide whether a proposed

action "is significant enough to warrant preparation of an EIS," courts owe no deference

to the Corps' interpretation of NEPA or the CEQ regulations because NEPA is addressed

to all federal agencies and Congress did not entrust administration of NEPA to the Corps

alone. *See Citizens Against Rails-to-Trails v. Surface Transportation Board,* 267 F.3d

1144, 1150 (D.C. Cir 2001); *see Amfac Resorts, LLC v. United States Dep't. of Interior*,

282 F.3d 818, 835 (D.C. Cir. 2002); *cf. Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir.

2001); *Grand Canyon Tr. v. FAA*, 351 U.S. App. D.C. 253, 290 F.3d 339, 341-42 (2002);

*see, also, Loper Bright Enterprises v. Raimondo*, 603 U. S. ____ (June 24, 2024)

("Courts must exercise their independent judgment in deciding whether an agency has

acted within its statutory authority, as the APA requires.") (slip opinion p. 35).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 26 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

93.     In addition to the NEPA statutory language and the CEQ regulations, the Corps has promulgated its own NEPA regulations, which define and limit the Corps' analysis, including the scope of such analysis.  See 33 C.F.R. Part 325, Appendix B.

94.     When the Corps received the application for a Clean Water Act Section 404 permit for the Project, it was required to comply with the environmental procedures and documentation required by NEPA, the CEQ regulations, and the Corps' NEPA regulations.  33 C.F.R. § 325.2(a)(4).

95.     The Corps must take a hard look at the direct, indirect, and cumulative impacts of the Project when considering the proposed Project.  Here, however, the Corps did not conduct an EIS despite the significant direct, indirect and cumulative impacts associated with the Project as described in the project purpose.  There is a but-for causal connection between the work authorized by Corps' fill permits and the impacts of the haul route, the man camps, and the discharges to WOTUS.

96.     CEQ regulations implementing NEPA provide that the lead agency may designate other Federal, State, local and Tribal agencies that have legal jurisdiction or special expertise with respect to any environmental impact involved in a proposal to be cooperating agencies.  40 CFR §1501.6.  The Tribe qualifies as a cooperating agency with regard to the social and environmental impacts on the Tribe that are caused by the Project.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 27 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

97. Alaska has many communities located in rural areas throughout the state, like Dot Lake, that are highly dependent on subsistence hunting and gathering. Resource development has the potential to bring substantive changes to rural and indigenous communities that are located in close proximity to the project. These changes can include environmental exposure to toxins, interference with subsistence activities, and disruption to communities. For that reason, Alaska has developed a health impact assessment (HIA) process to identify both the health benefits and the potential health risks in any proposed resource development project.

98. An HIA is a structured planning and decision-making process that analyzes the potential positive and negative impacts of programs, projects, and policies on the public's health. HIAs for resource development in Alaska are typically done as part of the NEPA process, when a lead federal agency determines that the impacts to human health should be evaluated as part of an EIS process. The Corps should have required an HIA for the Project.

**B.** **The Administrative Procedure Act**

99. Judicial review of federal agency action is governed by the Administrative Procedure Act (the "APA"). 5 U.S.C. §§ 701-706. The APA provides that courts "shall … hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 28 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 28 of 43

"without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

100.    An agency action is arbitrary if the agency "failed to consider an important aspect of the problem" or if it "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

101.    The APA provides that a person may also seek judicial review to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## C.    Alaska National Interest Lands Conservation Act

102.    Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126 (ANILCA) establishes a preference for subsistence uses on public lands in Alaska. Section 3112 declares Congress's policy to support rural residents engaged in a subsistence way of life in continuing to do so. Congress recognized that the continuation of subsistence uses is "essential" for Alaska Native "physical, economic, traditional, and cultural existence." 16 U.S.C. § 3111(1); id. § 3111(2) (Alaska is "unique" in lacking viable alternatives to subsistence).

103.    The term "subsistence uses" means "the customary and traditional uses by rural Alaska residents of wild, renewable resources for direct personal or family consumption as food, shelter, fuel, clothing, tools, or transportation; for the making and selling of handicraft articles out of nonedible byproducts of fish and wildlife resources

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 29 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

taken for personal or family consumption; for barter, or sharing for personal or family consumption; and for customary trade." 16 U.S.C. § 3113.

104.    ANILCA mandates that the taking of fish and wildlife for subsistence uses shall be given priority over other consumptive uses.  16 U.S.C. § 3114.  This priority applies to all federal actions that involve federal public lands, including navigable waters within or adjacent to federal lands.  *Alaska v. Babbitt*, 72 F.3d 698 (9th Cir. 1995).  Lands and navigable waters that may be affected by the Project include the Tanana River, the TNWR, and the Bureau of Land Management (BLM)-owned land on the western edge of the Project lease boundary.

105.    Section 810 of ANILCA requires that any federal land-use action that might significantly restrict subsistence uses must undergo a specific two-step process.

106.    First, the agency determines whether the contemplated action may significantly restrict subsistence use by evaluating (1) "the effect of such use, occupancy, or disposition [of public lands] on subsistence uses and needs," (2) "the availability of other lands for the purposes sought to be achieved," and (3) "other alternatives which would reduce or eliminate the use, occupancy, or disposition of public lands needed for subsistence purposes" (referred to as the Tier-1 evaluation).  *Kunaknana v. Clark*, 742 F.2d 1145, 1150-51 (9th Cir. 1984); 16 U.S.C. § 3120(a).

107.    Second, if the agency determines that the proposed action may significantly

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

restrict subsistence use, then it "must comply with the notice and hearing procedures" laid out in § 810(a)(1)-(3) (Tier-2 evaluation). *Kunaknana* at 1151. As part of the Tier-2 evaluation, the agency must give notice to the appropriate State agency, local committees, and regional councils; give notice of and hold a hearing in the vicinity of the area involved; and determine that the restriction is necessary and consistent with sound management principles, the activity will involve the minimum amount of public land necessary to accomplish the purpose of the use, and reasonable steps will be taken to minimize adverse impacts on subsistence. 16 U.S.C. § 3120(a)(1)-(3). ANILCA requires that an EIS contain the Tier 2 findings. 16 U.S.C. § 3120(b).

108.    The Corps failed to conduct a thorough analysis of subsistence issues as required by Section 810 of ANILCA. Without engaging in the ANILCA process to fully address the mine's potential effects on subsistence uses, the Tribe has suffered harms to its subsistence lifestyle. Dot Lake was not adequately consulted, and their input was not sufficiently incorporated into the decision-making process. This lack of meaningful consultation violates the procedural requirements of ANILCA designed to protect subsistence uses.

109.    By permitting the Project without taking the steps required under ANILCA, the Corps has prioritized commercial mining interests over subsistence uses. This contravenes ANILCA's mandate that subsistence uses have priority over other

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 31 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 31 of 43

consumptive uses on public lands.

**D.** **Federal Consultation Obligation and the Corps' Trust Responsibility**

110. In addition to the Corps' NEPA and ANILCA obligations, the Corps has a trust responsibility to the Tribe that is manifest through formal consultation. The Corps has failed to meet its obligations to the Tribe.

111. The relationship between the United States and Indian tribes is based on and built around the doctrine of trust responsibility. The trust doctrine is both a fundamental concept in federal Indian law and a motivating force: virtually every law enacted by Congress during the past 40 years involving Indians and tribes has cited to, and found its support in, the federal government's trust obligations. The trust obligation creates a fiduciary duty owed by the federal government to tribes to protect or enhance tribal assets (economic, natural, human or cultural). It imposes fiduciary standards on the conduct of the Executive, carried out through executive agencies, to act with care and loyalty, make trust property income productive, enforce reasonable claims on behalf of Indians, and take affirmative actions to preserve trust property.

112. The trust obligation to tribes has been codified in a number of statutes to impose a duty on federal agencies to coordinate and consult with tribes when tribal resources are or may be impacted. Additional coordination and consultation obligations have been created by Presidential Memoranda, Executive Orders, and agency policies.

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Alaska Native Claims Settlement Act (43 U.S.C. 1601 et seq.), 18 Dec 1971, as amended; 33 CFR part 325, Processing of Department of the Army Permits, 13 Nov 1986, as amended; Department of Defense American Indian and Alaska Native Policy, 20 Oct 1998; Engineer Regulation 1105-2-100, Planning Guidance Notebook, 22 Apr 2000; Executive Order 13175, Consultation and Coordination with Indian Tribal Governments, 06 Nov 2000; Executive Order 14096, Revitalizing Our Nation's Commitment to Environmental Justice, 21 April 2023; Consolidated Appropriations Act, 2004, as amended, Public Law 108-199, Division H., Section 161; Consolidated Appropriations Act, 2005, Public Law 108-447, Div. H., Section 518. p. Army Regulation 200-1, Environmental Protection and Enhancement, 13 Dec 2007; Engineer Regulation 1130-2-540, Project Operations – Environmental Stewardship Operations and Maintenance Guidelines and Procedures, 11 Aug 2008; Presidential Memorandum, Tribal Consultation, 05 Nov 2009; Announcement of Presidential support for the United Nations Declaration on the Rights of Indigenous Peoples, Public Papers of the President, December 16, 2010; Section 1129 of the Water Resources Development Act of 2018, Section 1129, Public Law 115-270, 23 Oct 2018; Department of Defense Instruction Number 4710.02:  DoD Interactions with Federally Recognized Tribes, 24 Sep 2018; Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships, January 26, 2021; Guidance for Federal Department and Agencies on

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS*
*OF ENGINEERS*
Case No. _____ – Page 33 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Indigenous Knowledge, November 30, 2022; Presidential Memorandum on Uniform Standards for Tribal Consultation, November 30, 2022.

113.    In undertaking any action which may impact tribal rights or interests, the Corps is guided by all of these things.

114.    On January 26, 2021, the President issued a Memorandum to the heads of all federal agencies entitled Tribal Consultation and Strengthening Nation-to-Nation Relationships.  The Memorandum reaffirmed Executive Order (E.O.) 13175, Consultation and Coordination with Indian Tribal Governments  signed on November 6, 2000 (65 FR 67249), and the policy announced in the Presidential Memorandum signed on November 5, 2009.

115.    The Presidential Memorandum also requires each agency to formulate a detailed plan of actions that it will undertake to implement the policies and directives of E.O. 13175.  E.O. 13175 requires that all federal agencies formulate "an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications."

116.    The Corps affirmed its commitment to engage in consultation with federally recognized Tribes and Alaska Native Corporations (ANCs) in its December 5, 2023 Tribal Consultation Policy Update ("2023 Update").  The Corps incorporates six Tribal Policy Principles into its planning, management, budgetary, operational,

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 34 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 34 of 43

regulatory, and legislative initiatives, management accountability systems and ongoing policy and regulation development processes: (1) recognizing and respecting Tribal sovereignty; (2) honoring and fulfilling the federal Trust responsibility; (3) maintaining Government-to-Government and Nation-to-Nation relations; (4) making consultation an integral, invaluable process of Corps planning and implementation for all of the Corps' Civil Works projects and programs; (5) supporting Tribal self-determination, self-reliance, and capacity building, to the fullest extent permitted by law and policy; and (6) protecting natural and cultural resources. 2023 Update, at 3-8.

117. Consultation is triggered by any Corps Civil Works policy or activity that has Tribal implications or substantial direct effect on Tribes or ANCs, including but not limited to general permit developments and permit applications. 2023 Update, at 5-6. The Corps is required under its policies to analyze whether its activities have Tribal implications or substantial direct effect on ANCs regardless of whether a Tribal Nation or ANC requests consultation. Such analysis is to be conducted by an individual who effectively interacts with Tribal Nations and/or ANCs.

118. Placing the burden on tribes within the area to initiate consultation is contrary to the letter and spirit of the Corps' consultation obligations and trust responsibility. *Mescalero Apache Tribe v. Rhoades*, 804 F. Supp. 251, 262 (Dist. N.M. 1992) (meaningful consultation means formally soliciting the Tribe's view of proposed

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 35 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 35 of 43

agency action); *Coyote Valley Band of Pomo Indians v. United States DOT*, No. 15-cv-04987-JSW, 2018 U.S. Dist. LEXIS 54974, at *8 (N.D. Cal. Mar. 30, 2018) (notice to an Indian tribe advising the tribe of a proposed activity not considered "government-to-government consultation").

119.    In addition, the Corps' notice was inadequate because it failed to describe the impacts of the 248-mile haul route or identify man camps for mine workers as within the scope of the Project, making it impossible for the public and affected tribes to ascertain the actual impacts of the proposed Project.

120.    Courts have made it clear that in order to satisfy its obligations, any agency's consultation must be meaningful:  it must occur early enough in the process that the tribe has the ability to influence the outcome of the permitting decision.  *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 720 (8th Cir. S.D. 1979) (decisions made by the Bureau of Indian Affairs regarding appointments to BIA supervisory positions set aside), *citing City of New York v. Diamond*, 379 F. Supp. 503, 517 (S.D.N.Y.1974), *Kelly v. United States Department of Interior*, 339 F. Supp. 1095, 1101 (E.D.Cal.1972).  *See, also, Yankton Sioux Tribe v. Kempthorne*, 442 F. Supp. 2d 774 (D. S.D. 2006) (changes in education funding) and *Lower Brule Sioux Tribe v. Deer*, 911 F. Supp. 395 (D. S.D. 1995) (employment reductions). In each case, the courts found that the BIA had violated consultation requirements clearly established by federal law or by specific BIA policy.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 36 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

121. Failure to comply with an agency's own consultation requirements and federal law violates both the general principles governing administrative decision-making, and the agency's trust responsibility. *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 721 (8th Cir. 1979), *citing Morton v. Ruiz, supra* at 236, 94 S. Ct. at 1075, *Seminole Nation v. United States*, 316 U.S. 286, 296, 62 S. Ct. 1049, 86 L. Ed. 1480 (1942).

122. An agency's failure to comply with its own consultation policy violates general principles that govern administrative decisionmaking. *Yankton Sioux Tribe v. Kempthorne*, 442 F. Supp. 2d 774, 785 (Dist. S.D. 2006), citing *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 721 (8th Cir. 1979).

123. The Corps' after-the-fact, web-based government-to-government meeting with Dot Lake was not meaningful consultation, and neither mitigates nor excuses the Corps' failure to consult.

## FIRST CLAIM FOR RELIEF
**National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.***
**Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.***

124. Plaintiff re-alleges and reincorporates by reference all the allegations set forth in this Complaint as if set forth here in full.

125. NEPA requires agencies to take a hard look at the impacts that major federal actions will have on the human environment.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 37 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 37 of 43

126. The federal trust responsibility requires that agencies take into consideration tribal treaty and other rights during the NEPA process. *Nw. Sea Farms, Inc. v. U.S. Army Corps of Eng'rs*, 931 F. Supp. 1515, 1520 (W.D. Wash. 1996).

127. Defendants' issuance of Permit No. POA-2013-00286 is "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law." *Id*. § 706(2)(D). The Court must "compel agency action unlawfully withheld." *Id*. § 706(1).

128. Permit No. POA-2013-00286 should be rescinded and the Corps compelled to evaluate all direct, indirect and cumulative impacts of the Project, including the Man Camps, the mining impacts, the haul route impacts, the impacts to subsistence uses, and the health impacts.

## SECOND CLAIM FOR RELIEF
### Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126
### Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*

129. Plaintiff re-alleges and reincorporates by reference all the allegations set forth in this Complaint as if set forth in full here.

130. The Corps' CWA § 404 permitting decision is a federal land use action that may significantly restrict subsistence uses.

131. Adverse impacts to the environment often have adverse impacts to subsistence. Due to their procedural similarities, courts have often looked to NEPA to construe the requirements for ANILCA's Tier 1 subsistence evaluations. *See Sierra Club*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE v. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 38 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

*v. Penfold*, 857 F.2d 1307, 1321 (9th Cir. 1988) and *SE. Alaska Conservation Council v. U.S. Forest Serv. (SEACC)*, 443 F.Supp.3d 995, 1017-18 & n.172 (D. Alaska 2020).

132.    Defendants failed to conduct the Tier-1 and Tier-2 analysis of the impacts of the Project on federal public lands, including navigable waters within or adjacent to federal lands, required under Section 810 of ANILCA.

133.    The Project will likely cause significant disruption to the traditional subsistence activities of rural residents including the Tribe, including hunting, fishing, and gathering, which are integral to the Tribe's cultural and economic survival.  The Project will also lead to environmental degradation, including contamination of water sources, habitat destruction, and disruption of wildlife patterns stemming from the discharges related to Permit No. POA-2013-00286, potential impacts to the Tanana River, and potential impacts to wildlife patterns due to the increased haul traffic. Such impacts will reduce the availability and quality of resources necessary for subsistence.

134.    Defendants' failure to comply with the requirements of ANILCA in issuing Permit No. POA-2013-00286 was "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law." *Id*. § 706(2)(D), and the Court must "compel agency action unlawfully withheld." *Id*. § 706(1).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 39 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 39 of 43

135.     Permit No. POA-2013-00286 should be rescinded and the Corps compelled to evaluate the impacts of the Project on subsistence uses.

### THIRD CLAIM FOR RELIEF
**Failure to Consult**

136.     Plaintiff re-alleges and reincorporates by reference all the allegations set forth in this Complaint as if set forth in full here.

137.     Defendants failed to consult with the Tribe, as well as all other federally recognized Indian tribes, in a manner that satisfied their obligations under the Corps' DOI Tribal Consultation Policy in issuing Permit No. POA-2013-00286.

138.     Defendants' failure to adhere to its own tribal consultation policies in issuing Permit No. POA-2013-00286 is unlawful and violates the APA. *C.f. Nat'l Small Shipments Traffic Conf., Inc. v. Interstate Commerce Comm'n*, 725 F.2d 1442, 1449 (D.C. Cir. 1984); *Wyoming v. U.S. Dep't of Interior*, 136 F. Supp. 3d 1317, 1346 (D. Wyo. 2015), *vacated as moot sub nom. Wyoming v. Sierra Club*, No. 15-8126, 2016 WL 3853806 (10th Cir. July 13, 2016).

139.     Therefore, Defendants' issuance of Permit No. POA-2013-00286 was "arbitrary, capricious, an abuse of discretion, [and] not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law." *Id.* § 706(2)(D), and the Court must "compel agency action unlawfully withheld." Id. § 706(1).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 40 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 40 of 43

140. Permit No. POA-2013-00286 should be rescinded and the Corps compelled to meaningfully consult with the Tribe.

**FOURTH CLAIM FOR RELIEF**
**Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412)**

141. Plaintiff re-alleges and reincorporates by reference all the allegations set forth in this Complaint as if set forth in full here.

142. A court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to 28 U.S. Code § 2412 subsection (a), incurred by that party in any civil action, including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

143. The Corps is an agency of the United States and LTG Spellmon is an official of the United States acting in his official capacity.

144. The Corps' position regarding the scope of environmental review and its failure to consult with Dot Lake was not substantially justified, and there are no special circumstances that would make an award to Dot Lake of its costs, fees and other expenses.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS
OF ENGINEERS*
Case No. _____ – Page 41 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 41 of 43

145. Dot Lake is entitled to an award of the costs, attorneys' fees and other expenses it has incurred and will incur in prosecuting the claims asserted in this proceeding.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that the Court:

1. Declare that Defendants violated NEPA as described in this complaint;

2. Declare that Defendants violated ANILCA as described in this complaint;

3. Declare that Defendants violated the APA as described in this complaint;

4. Declare that Defendants violated its own consultation policies as described in this complaint;

5. Issue injunctive relief rescinding, setting aside, and holding unlawful Permit No. POA-2013-00286, requiring Defendants to fully comply with the APA, NEPA, ANILCA and its consultation obligations, and prohibiting any activity in furtherance of the construction and operation of the Project and related facilities;

6. Award Plaintiff fees, costs and other expenses pursuant to 28 U.S.C. § 2412 and otherwise authorized by law; and

7. Grant such other relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS*
*OF ENGINEERS*
Case No. _____ – Page 42 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 42 of 43

DATED at Seattle, Washington this 28th day of June, 2024.

Schwabe, Williamson & Wyatt, P.C.

Attorneys for Plaintiff VILLAGE OF DOT LAKE, a federally recognized Indian tribe

_____
Connie Sue Martin
AKSB #2202017
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*VILLAGE OF DOT LAKE V. UNITED STATES ARMY CORPS OF ENGINEERS*
Case No. _____ – Page 43 of 43

SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5TH AVENUE, SUITE 3400
SEATTLE, WA 98101
TELEPHONE: 206-622-1711

142328\284044\45445945.V1

Case 3:24-cv-00137-JMK   Document 1   Filed 07/01/24   Page 43 of 43