Eric B. Fjelstad, Bar No. 9505020
EFjelstad@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone: 907.279.8561
Stacey Bosshardt, D.C. Bar No. 458645
(*pro hac vice pending*)
SBosshardt@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.661.5862

**Attorneys for Proposed Intervenor-Defendant**
 **Peak Gold, LLC**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VILLAGE OF DOT LAKE, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL SCOTT A. SPELLMON, in his official capacity as Chief of Engineers and Commanding General, United States Army Corps of Engineers,<br><br>Defendants. | Case No. 3:24-cv-00137-SLG<br><br><br><br>**PEAK GOLD, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a) AND (b)** |

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.,* No. 3:24-cv-00137-SLG
Page 1 of 20

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Peak Gold, LLC ("Peak Gold") moves under Federal Rule of Civil Procedure 24(a) and (b) to intervene in this action challenging a permit issued nearly two years ago, September 2, 2022, by the U.S. Army Corps of Engineers ("Corps") to Peak Gold under Section 404 of the Clean Water Act ("Section 404 Permit"). The permit, authorizing the fill of 5.26 acres of wetlands, allowed Peak Gold to build roads and other infrastructure as part of its plan to develop and operate a mine site on lands owned by the Native Village of Tetlin ("Tetlin"), a federally-recognized tribe, approximately 10 miles southeast of Tok, Alaska. In addition to the small areas of fill permitted by the Corps, the Manh Choh Project ("Manh Choh" or the "Project") includes small, open pit mining on Tetlin's land under a mineral lease agreement that provides royalties to Tetlin. The ore is then carried on custom-built trucks 240 miles for processing at the long-existing Fort Knox mine and mill near Fairbanks. The Manh Choh mine is anticipated to be in production for approximately four and a half years.

Peak Gold built the necessary infrastructure at Tetlin in late 2022 after receiving the Section 404 Permit and began mining in August 2023 consistent with its state-law permits to do so. Peak Gold moves to intervene so it can protect its significant interests in the Project it has spent 10 years, and millions of dollars, analyzing, planning, and permitting—and which is now fully built and operational.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

163531886.1

Peak Gold moves to intervene in this case by right, or in the alternative permissively, to defend the actions taken by Federal Defendants in connection with the Project (namely, issuance of the Section 404 permit), and to protect Peak Gold's interests in this litigation. *See* FED. R. CIV. P. 24. Peak Gold's significant, protectable interests, including its rights under its lease with Tetlin and its interest in mining that has been ongoing for seven months, relate directly to Plaintiff's belatedly-asserted claims. Peak Gold's interests would be significantly impaired by the declaratory and injunctive relief Plaintiff seeks. Emergency relief, should Plaintiff seek it, would inflict severe financial harms on Peak Gold, Tetlin, and the regional economy, despite the significant reliance interests of both Peak Gold and other non-parties.

The other requirements under Rule 24 are also satisfied. Peak Gold's intervention is timely, because nothing has yet happened in the lawsuit, and will not prejudice the existing parties. Peak Gold's defenses to Plaintiff's claims also raise questions of fact or law in common with the main action against Federal Defendants. And, because Federal Defendants do not share Peak Gold's economic interests in its Project and lack access to information about the ore transport and other activities outside the Corps' jurisdiction, they cannot adequately represent Peak Gold's interest. For all these reasons, the Court should grant Peak Gold's motion to intervene as a matter of right or, alternatively, permissively.

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

Case 3:24-cv-00137-SLG    Document 8-1    Filed 08/20/24    Page 3 of 20

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

163531886.1

## I. BACKGROUND AND PROCEDURAL POSTURE

Peak Gold's Manh Choh Project is operated through a limited liability company with two members: CORE Alaska, LLC, a subsidiary of Contango ORE, Inc., and KG Mining (Alaska), Inc., a subsidiary of Kinross Gold Corporation.[1] Through a separate subsidiary, Fairbanks Gold Mining, Inc., Kinross has been responsibly producing gold at Fort Knox, its Interior Alaska mine near Fairbanks, for more than 25 years.[2]

The property where Peak Gold has built the Manh Choh mine is owned and controlled by Tetlin, an indigenous Alaska Native community, which will receive royalty payments under its lease.[3] Tetlin, whose members reside on lands set aside by a Presidential Executive Order on June 10, 1930, chose to not participate in the 1971 Alaska Native Claims Settlement Act as a regional corporation, instead receiving a patent from the United States government for 743,147 acres of land.[4] As a result, Tetlin has not received revenue sharing from any resource development completed by any Alaska Native regional corporations.

---

[1] *See* Declaration of Shane Parrow, Director of Operations for Manh Choh ("Parrow Decl.") ¶ 4 in Support of Motion to Intervene filed herewith.

[2] Parrow Decl. ¶ 6.

[3] Parrow Decl. ¶¶ 5, 10, 15.

[4] Parrow Decl. ¶ 17.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

Case 3:24-cv-00137-SLG    Document 8-1    Filed 08/20/24    Page 4 of 20
163531886.1

Tetlin has a high poverty rate and is a recognized environmental justice community.[5] Tetlin leased mineral rights to Peak Gold so that its members will receive income from mineral development and can benefit from the natural bounty of their lands. Additionally, Tetlin members benefit from the Project's training and employment opportunities, including 25 Tetlin members now employed to work at Manh Choh.[6] Peak Gold has invested heavily in the community.[7] In 2023 alone, Peak Gold invested more than $285,000 locally, supporting a dozen community programs in the areas of education, community activities and local development, cultural preservation and environmental sustainability.[8] Peak Gold also spent over $3.2 million on local area goods and services in 2023, directly supporting over a dozen businesses in the Tok/Delta Junction area.[9] Peak Gold anticipates it will purchase an estimated $425 million in goods and services from local businesses in Tok, Delta Junction, Fairbanks and other locations for the Project.[10]

Peak Gold has spent 10 years and hundreds of millions of dollars doing extensive

---

[5] Parrow Decl. ¶ 15.

[6] Parrow Decl. ¶¶ 15, 23.

[7] Parrow Decl. ¶¶ 21–23.

[8] Parrow Decl. ¶ 21.

[9] Parrow Decl. ¶ 22.

[10] Parrow Decl. ¶ 24.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Case 3:24-cv-00137-SLG    Document 8-1    Filed 08/20/24    Page 5 of 20
Page 5 of 20
163531886.1

planning to ensure that both the mining and the ore transport operations are conducted safely and in a manner that minimizes impacts to the environment where possible. Between 2020 and today, Peak Gold spent approximately $333 million on exploration, feasibility studies, environmental studies, ore transport and other expenses.[11] It is estimated the mine will produce approximately one million ounces of gold equivalent from the Manh Choh deposit over the life of the mine, contributing to jobs and economic prosperity in the Tok and Fairbanks areas and beyond.[12]

As part of the Corps' permitting process, Peak Gold submitted a 436-page environmental information document comprehensively analyzing impacts of its proposal and explaining how the Project avoided impacts or would minimize and mitigate them.[13] After the Corps published a notice of the permit application, Peak Gold submitted additional information to address in detail questions raised by the Environmental Protection Agency ("EPA") and the U.S. Fish and Wildlife Service ("FWS").[14] The Corps addressed EPA and FWS's comments, and summarized Peak Gold's responses, in the Corps' decision document ("Environmental Assessment/Memorandum for

---

[11] Parrow Decl. ¶ 14.

[12] Parrow Decl. ¶ 25.

[13] Ex. B to Parrow Decl.

[14] Parrow Decl. ¶ 27.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Case 3:24-cv-00137-SLG    Document 8-1    Filed 08/20/24    Page 6 of 20
163531886.1

Record").[15] Peak Gold's application also included a Permittee Responsible Mitigation Plan to compensate for unavoidable impacts to wetlands, and committed to use best management practices and specified mitigation measures as conditions of the permit.[16]

Although Peak Gold at one time considered building housing for workers on the Tetlin lands where the mine is located, it ultimately chose to offer housing in a secure, controlled-access facility (formerly a Princess Cruise's hotel) in Tok that also houses the offices used by Peak Gold's administrative personnel during business hours.[17] The campus has 24-7 security; requires all guests to sign in; has a strict policy against alcohol or drugs on the premises; and requires pre-written consent for on-demand searches of personal property.[18]

Ore transport operations have now been underway for seven months, using 95-foot trucks that were purpose-built to transport the ore and to be the safest trucks on the roads, despite being of similar size to many commercial vehicles already operating on Alaska's roads.[19] Peak Gold has worked with State of Alaska, Department of

---

[15] Parrow Decl. ¶ 27; Ex. C to Parrow Decl. at 8-21.

[16] Ex. C to Parrow Decl. at 4, 43–44.

[17] Parrow Decl. ¶¶ 36-38.

[18] Parrow Decl. ¶ 38.

[19] A corporation formed in August 2023 consisting of three individual members, including Chief of the Village of Dot Lake Tracy Charles-Smith, sued State of Alaska, Department of Transportation and Public Facilities (Case No. 4FA-23-02289CI) in

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Page 7 of 20

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Transportation and Public Facilities to ensure that the lengths of the vehicles and the loads the trucks will carry are legal and do not require special permits or exemptions.[20] Loads are fully covered and secured so that the associated dust is minimal.[21] Dispatchers communicate in real time with the truck drivers about conditions and potential hazards.[22] Black Gold Transport ("BGT"), the contractor that supplies the drivers, has served Alaska since 1987 and has an outstanding safety record, based on a rigorous training program and a comprehensive safety management system.[23] In the seven months the ore transport has been ongoing, no significant traffic or safety incidents have occurred.[24]

Before the ore transport began, Peak Gold met with area schools and bus

---

November 2023, seeking to enjoin the ore transport, and moved for a preliminary injunction. The Fairbanks Superior Court granted Peak Gold's intervention motion in that case, denied the plaintiff's motion for a preliminary injunction, and dismissed three of the four claims. Peak Gold includes for this Court's reference the affidavit filed in that action by Jeremy Huffman, the operator of Black Gold Transport, dated November 25, 2023 ("Huffman Aff."), as Exhibit A. *See* Huffman Aff. ¶ 15.

[20] Parrow Decl. ¶¶ 50–52; Huffman Aff. ¶¶ 11–12.

[21] Huffman Aff. ¶ 25. Minimizing dust is also a condition of the Corps' permit. Ex. C to Parrow Decl. at 44.

[22] Huffman Aff. ¶ 27.

[23] Parrow Decl. ¶ 53; Huffman Aff. ¶¶ 1, 5.

[24] Parrow Decl. ¶ 49. The trucks drive the ore from Manh Choh to Fort Knox via the Alaska Highway from Tetlin to Delta Junction, the Richardson Highway from Delta Junction to the Steese Expressway, the Steese Expressway to the junction with the Elliott Highway, and the Steese Highway from the Elliott Highway junction to the Fort Knox Road junction. Huffman Aff. ¶ 13.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

companies that use roads on the ore transport route to apprise them of its plans.[25] Drivers were trained on the location of school zones and to take extra precautions when approaching those areas.[26] BGT uses GPS to monitor and strictly enforce speed limits in vehicles used for the Manh Choh Project.[27]

Peak Gold has conducted extensive outreach throughout the planning process regarding impacts from both the mining and the ore transport.[28] These efforts began in early 2020 and included multiple attempts to meet with the Dot Lake Village Council and Village of Dot Lake residents. Those efforts included in-person visits to the Village of Dot Lake, email communication with the Village Council, phone calls to the Village Council, and email communication and phone conversations with Chief Tracy Charles-Smith. In December 2021, the first and only Village of Dot Lake meeting was held. Peak Gold continued outreach efforts until February 2024 when it received a letter from the Dot Lake Village Council stating they were not interested in further engagement.[29]

---

[25] Parrow Decl. ¶ 54; Huffman Aff. ¶ 30.

[26] Huffman Aff. ¶ 31.

[27] Huffman Aff. ¶¶ 32–33.

[28] Ex. B to Parrow Decl. at 169-73.

[29] Parrow Decl. ¶ 47.

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

Case 3:24-cv-00137-SLG    Document 8-1    Filed 08/20/24    Page 9 of 20
163531886.1

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

## II.    ARGUMENT

### A.    Peak Gold Should Be Granted Intervention as of Right.

Intervention as of right is governed by Rule 24(a) of the Federal Rules of Civil Procedure, which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). A party seeking to intervene under Rule 24(a)(2) must: (1) make a timely application to intervene; (2) possess a "significantly protectable" interest relating to the subject of the litigation; (3) be situated such that its interest may be impaired or impeded by disposition of the action; and (4) have an interest that is not adequately represented by an existing party in the lawsuit. *Sw. Ctr. for Biological Diversity v. Berg* ("*Berg*"), 268 F.3d 810, 818 (9th Cir. 2001).

In the Ninth Circuit, Rule 24(a)(2) is construed "broadly in favor of proposed intervenors." *Wilderness Soc'y. v. U.S. Forest Serv.,* 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angele*s, 288 F.3d 391, 397 (9th Cir. 2002)). A court's analysis is "guided primarily by practical considerations" and not "technical distinctions." *Berg*, 268 F.3d at 818 (internal quotation marks and citation omitted). Here, Peak Gold satisfies all threshold requirements.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Page 10 of 20
163531886.1

### 1.     Peak Gold's Motion to Intervene is Timely.

To determine whether a motion to intervene is timely, a court considers: (1) the stage of the proceeding; (2) any prejudice to other parties; and (3) the reason for and length of the delay. *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).

Peak Gold's intervention is timely. Plaintiff filed their complaint on July 1, 2024, ECF No. 1, and served the U.S. Attorney's Office on July 8, 2024. Federal Defendants have not yet appeared and have not yet answered the complaint. Under these circumstances, intervention will neither prejudice any of the parties nor disrupt the orderly and timely determination of the issues in this case. Peak Gold is also prepared to meet any briefing and scheduling requirements ordered by the Court, coordinate with Federal Defendants to minimize duplicative briefing, and otherwise structure its participation so that the litigation proceeds in orderly fashion and intervention does not complicate case management.

### 2.     Peak Gold has Significantly Protectable Interests Related to the Project.

Peak Gold's Section 404 Permit and its interest in the mineral lease agreement with Tetlin are protectable interests within the meaning of the Rule. In *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd sub nom. Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995), the Ninth Circuit held that "[w]hether an applicant for intervention

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

163531886.1

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

demonstrates sufficient interest in an action is a practical, threshold inquiry." Addressing the type of interest needed to qualify for intervention, the court found that no "specific legal or equitable interest need be established"; an applicant must only demonstrate some "significant protectable interest." *City of Los Angeles*, 288 F.3d at 398 (internal quotation marks and citations omitted). No unique considerations exist when a non-party seeks to intervene in a case raising a claim under NEPA; "the operative inquiry should be, as in all cases, whether 'the interest is protectable under some law,' and whether 'there is a relationship between the legally protected interest and the claims at issue.'" *Wilderness Soc'y*, 630 F.3d at 1180 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993).

Peak Gold has significant protectable interests directly implicated by Plaintiff's claims. Peak Gold's interest in its Section 404 Permit is a protectable interest as a matter of law. *Sierra Club*, 995 F.2d 1478 (concluding that holder of Clean Water Act permit had interest in action against EPA challenging permit terms), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Peak Gold's rights in its lease agreement with Tetlin are also protected under federal law. *United States v. Shumway*, 199 F.3d 1093, 1099–1100 (9th Cir. 1999) ("In law, the word 'claim' in connection with the phrase 'mining claim' represents a federally recognized right in real property."); *Berg*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests."); *see also Chilkat Indian*

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

163531886.1

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

*Vill. of Klukwan v. Bureau of Land Mgmt.,* No. 3:17-cv-00253-TMB, 2018 WL 9854668, at *3 (D. Alaska May 24, 2018) (finding that federal mining claims and leases to explore these claims are legally protected interests). Peak Gold has spent more than $333 million on the Project to-date.[30] These interests satisfy Rule 24. *see also N. Alaska Env't Ctr. v. Scott de La Vega*, No. 3:20-cv-00187, 2021 WL 236306, at *1 (D. Alaska Jan. 22, 2021) (granting intervention to State of Alaska because of it "considerable economic interest … because it maintains that road access to mines may generate hundreds of millions of dollars in revenue for the State and provide employment.").

### 3. Peak Gold's Interests May be Impaired or Impeded by Disposition of Plaintiff's Claims.

Whether the disposition of the action may impede or impair the applicant-intervenor's interests turns on a practical inquiry: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822 (quoting FED R. CIV. P. 24, Advisory Committee's notes). "[T]he applicable standard requires only a showing that disposition of this case *may* impair their ability to protect their interest." *Alaska v. Jewell* ("*Jewell*"), No. 3:14-cv-00048-SLG, 2014 WL 12521321, at *3 (D. Alaska June 10, 2014).

---

[30] Parrow Decl. ¶ 14.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Here, the relief Plaintiff seeks (if granted) would clearly and inescapably impair Peak Gold's interests; Plaintiff asks the Court to rescind the Clean Water Act permit Peak Gold needed to fill jurisdictional waters to build roads and infrastructure for the Project and to "prohibit[] any activity in furtherance of the construction and operation of the Project." Compl. at ¶ 42. Those wetlands, of course, were filled long ago, raising important jurisdictional barriers to Plaintiff's claims and troubling questions about why it waited so long to seek relief. Nonetheless, the requested relief, if granted, could significantly impair Peak Gold's ability to accomplish the Project it has spent years, and invested hundreds of millions, studying, permitting, and building, and which it has now operated since late 2023.

### 4. Peak Gold's Interests Are Not Adequately Represented by the Existing Parties to the Litigation.

A prospective intervenor bears the burden of showing that its interests may not be adequately represented by the existing parties, but that burden is "minimal." *Berg*, 268 F.3d at 822–23 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). "[T]he applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Id.* at 822. Any doubt regarding the adequacy of representation should be resolved in favor of the would-be intervenor. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.03[4][a][i].

In evaluating the adequacy of an existing party to represent the applicant-

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
163531886.1

intervenor, courts consider whether the interest of a present party is such that it will "undoubtedly" make all the intervenor's arguments; whether a present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498–99 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173. Courts have recognized that federal agencies do not adequately represent the interests of private parties because of the broader spectrum of goals they must reconcile. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'"); *Jewell*, 2014 WL 12521321, at *4 (Defendant Department of the Interior "is a dual-mission agency, charged with both protecting the nations' natural resources and developing those same resources, including energy resources like oil and gas.").

No existing party in this case adequately represents Peak Gold's interests. Although Federal Defendants presumably share Peak Gold's interest in upholding its decision to issue a Section 404 Permit for the Project, that mutual litigation goal does not guarantee that the agencies will zealously represent Peak Gold's interests. As the permit issuing representative and body, Federal Defendants are no doubt motivated to defend

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

163531886.1

the integrity of the permitting process. *Forest Conservation Council*, 66 F.3d at 1499. In contrast, Peak Gold's separate and distinct (even if aligned) interest is to pursue its business opportunities and recover its investment in the Project. *Id.* The Ninth Circuit has determined that the government cannot adequately represent the "local and individual interests" of private parties in such circumstances. *Id.* The costs of any delay, and the extent to which an injunction would jeopardize Peak Gold's cash flows and harm the Native Village of Tetlin, BGT, and those working directly or indirectly on the Project, do not directly concern Federal Defendants.

If permitted to intervene, Peak Gold will furnish the Court with a unique, indispensable perspective not otherwise represented by the parties to this case. *See Sierra Club*, 995 F.2d at 1483 (allowing intervention of right to permit holder and explaining: "the adversary process can function only if both sides are heard"). Peak Gold, which has the best information concerning its operations and the most up to date information concerning the Project's status, including the hundreds of jobs it has created, can also "bring[] to the court's attention valuable information not available to or provided by [existing] parties." *Forest Conservation Council*, 66 F.3d at 1497 n.9. This on-the-ground, real-time perspective will be particularly important if Plaintiff seeks injunctive relief, which would require this Court to consider the equities in addition to the merits. Whereas the Corps' involvement with the Project ended—and the administrative record

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
163531886.1

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

closed—in September 2022 after it granted the permit, Peak Gold has current, reliable information concerning mine and ore transport operations, as well as the jobs and benefits those enterprises bring. And where the Corps may lack the information necessary to address Plaintiff's baseless allegations about ore transport safety and alleged "man camps" (which are far afield from the Corps' permitting jurisdiction under the Clean Water Act), Peak Gold has the relevant information to dispatch Plaintiff's false claims and ominous predictions. Granting intervention to Peak Gold will provide the Court with information the Corps lacks that will aid the Court's resolution of Plaintiff's claims.

Under the facts present here, Peak Gold has made far more than the "minimal showing" Rule 24(a) requires that its protectable interests may not be adequately represented by the existing defendant.

## B. Alternatively, Peak Gold Should be Granted Permissive Intervention.

When a timely motion is made, Rule 24(b) authorizes a court to grant intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b). Under this standard, it is not necessary for the intervenor to demonstrate a direct interest in the subject matter or inadequate representation by the existing parties. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002). Where the requirements of Rule 24(a) are met, a court *must* allow intervention; where the requirements of Rule 24(b) are met, it *may* do so.

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Page 17 of 20
163531886.1

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Peak Gold meets the "minimal" criteria for permissive intervention. The company's motion to intervene is timely at this early stage of the litigation, and its participation will not unduly delay the action or unfairly prejudice existing parties. *See, e.g., Kootenai Tribe of Idaho*, 313 F.3d at 1111 & n.10 (granting intervention where "motions were filed near the case outset and the defendant-intervenors said they could abide the court's briefing and procedural scheduling orders"). Peak Gold shares common issues of law and fact with the defenses that will be raised by Federal Defendants. *See Eyak Pres. Council v. U.S. Forest Serv.*, No. A03-180CV (JWS), 2003 WL 24085349, at *2 (D. Alaska Dec. 9, 2003) (finding applicant-intervenor's assertion that federal agency complied with NEPA "raise[d] questions of fact and law which are common to the defenses raised by the [federal defendant]"). Under permissive intervention criteria, this Court may allow Peak Gold to fully participate in the litigation. *Kootenai Tribe of Idaho*, 313 F.3d at 1108–11; *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1109 (9th Cir. 2000), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *Conservation Nw. v. Rey*, No. C08-1067, 2008 WL 11344657, at *2 (W.D. Wash. Oct. 16, 2008) (economic interest supported permissive intervention in NEPA claim).

## III.    CONCLUSION

Peak Gold has satisfied the criteria for intervention under either Rule 24(a) or 24(b). Its singular interest in the Project that Plaintiff challenges is not only a

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

163531886.1

"significantly protectable interest," but one that will contribute invaluable information to the litigation and assist this Court in resolving Plaintiff's claims. Peak Gold's superior knowledge of the permitting process, the Project area, the status of the Project, and its beneficial economic impacts will ensure that the Court has the information relevant to the proceedings necessary to resolve any disputed issues of law or fact. The motion should be granted.

DATED:  August 20, 2024.

PERKINS COIE LLP

s/*Eric B. Fjelstad*
Eric B. Fjelstad, Bar No. 9505020
EFjelstad@perkinscoie.com
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone: 907.279.8561
Stacey Bosshardt, D.C. Bar No. 458645
(*pro hac vice pending*)
SBosshardt@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.661.5862

**Attorneys for Proposed Intervenor-Defendant Peak Gold, LLC**

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG
Case 3:24-cv-00137-SLG   Document 8-1   Filed 08/20/24   Page 19 of 20
163531886.1

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2024 I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:24-cv-00137 who are registered CM/ECF users will be served by the CM/ECF system.

/s *Eric B. Fjelstad*

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PEAK GOLD, LLC'S MEM. IN SUPPORT OF MOT. TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)
*Village of Dot Lake v. U.S. Army Corps of Eng'rs, et al.* No. 3:24-cv-00137-SLG

163531886.1