Eric B. Fjelstad, Bar No. 9505020
EFjelstad@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone: 907.279.8561
Stacey Bosshardt, D.C. Bar No. 458645
(*pro hac vice*)
SBosshardt@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.661.5862

**Attorneys for Proposed Intervenor-Defendant**
 **Peak Gold, LLC**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VILLAGE OF DOT LAKE, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, et al.,<br><br>Defendants. | Case No. 3:24-cv-00137-SLG<br><br>**PEAK GOLD, LLC'S REPLY IN SUPPORT OF MOTION TO INTERVENE UNDER FED. R. CIV. P. 24(a) AND (b)** |

Peak Gold, LLC's ("Peak Gold") motion to intervene, ECF No. 8, should be granted for the reasons set forth in its memorandum in support of the motion, ECF No.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

8-1. Under Ninth Circuit law, Rule 24(a)(2), which governs intervention as of right, is construed "broadly in favor of proposed intervention."[1] Of the four requirements an applicant must demonstrate under the Rule, Plaintiff contests only two: (1) that Peak Gold's $333 million dollar investment in the Manh Choh mine and its interest in the Clean Water Act permit that Plaintiff asks the Court to rescind and set aside are "protectable interests" within the Rule's meaning, and (2) that the federal government's representation of Peak Gold's interests may be inadequate. Because Peak Gold has satisfied both requirements, Plaintiff's contentions lack merit.

Peak Gold's interest in mining operations in which it has invested hundreds of millions of dollars and a permit it spent years obtaining clearly suffice under the Rule.[2]

---

[1] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)).

[2] *Great Basin Res. Watch v. U. S. Dep't of the Interior*, 2020 WL 1308330, at *2 (D. Nev. Mar. 19, 2020) ("[C]ourts routinely grant intervention where a lawsuit involves the legality of permits authorizing a project granted by a federal agency to the proposed intervenor."); *Chilkat Indian Vill. of Klukwan v. Bureau of Land Mgmt.*, 2018 WL 9854668, at *3 (D. Alaska May 24, 2018) (granting intervention in NEPA case where companies' "mining claims and . . . lease to explore these claims are legally protected interests"); *Mont. Elders for a Livable Tomorrow v. U.S. Off. of Surface Mining*, 2015 WL 12748263, at *1 (D. Mont. Dec. 11, 2015) (granting motion to intervene in NEPA case by mining company that had "a significantly protectable interest under Rule 24(a) as owner and operator of the mine that is at issue in this case"); *Save Our Cabinets, Earthworks v. U.S. Dep't of Agric.,* 2016 WL 9274958, at *1 (D. Mont. June 8, 2016) (granting intervention where applicant "has a significant protectable interest in Defendants' approval of the Project for which it is the principal mine operator and permit-holder"); *Idaho Conservation League v. U.S. Forest Serv.*, 2011 WL 13182932, at *2 (D.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

This established interest is not any less protectable because of the statutes or theories under which Plaintiff's claims arise. Plaintiff's only argument to the contrary relies on outdated cases that are no longer good law. Plaintiff's brief repeatedly cites cases, which Plaintiff characterizes as governing Ninth Circuit law, holding that prospective intervenors lack any protectable interest regarding claims based on statutes (like NEPA) that apply only to the federal government.[3] Under that line of cases, a private or non-federal government entity could not intervene in a case if the claims were based on NEPA because only the federal government is bound by NEPA's requirements. Conspicuously, Plaintiff's brief does not cite any NEPA case addressing intervention decided after 2006. That is no coincidence. The so-called "federal defendant rule" was expressly abrogated in 2011, when the Ninth Circuit held:

> We now abandon the "federal defendant" rule. When considering motions to intervene of right under Rule 24(a)(2), courts need no longer apply a categorical prohibition on intervention on the merits, or liability phase, of NEPA actions. To determine whether putative intervenors demonstrate the "significantly protectable" interest necessary for intervention of right in a NEPA case, the operative inquiry should be whether the "interest is protectable under some law" and whether "there is a relationship between the legally protected interest and the

---

Idaho Sept. 2, 2011) (granting intervention where applicant "seeks to explore mineral mining opportunities in the area").

[3] ECF No. 14 ("Pl.'s Br.") at 8 (citing *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1114 (9th Cir. 2000); *id*. at 15 (citing the Ninth Circuit's "none but the federal defendant" rule).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

claims at issue." . . . A putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if "it will suffer a practical impairment of its interests as a result of the pending litigation."[4]

Despite Plaintiff's assertion that "prospective intervenors do not have a significant protectable interest in the Corps' liability for violating a federal statute or regulation that solely regulates the agency," Pl.'s Br. at 8, the Ninth Circuit has held unequivocally that "[n]o part of Rule 24(a)(2)'s prescription engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants."[5] Similarly, to support its erroneous argument that a "purely economic" interest is insufficient to intervene in a NEPA case, Plaintiff cites a case that is also no longer good law on that point — if it ever was.[6] In sum, Peak Gold's interest is both "significant" and "protectable" under Ninth Circuit law.[7]

---

[4] *Wilderness Soc'y,* 630 F.3d at 1180 (citing *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1494 (9th Cir. 1993)). As with Plaintiff's NEPA claims, its consultation and ANILCA claims also could result in "a practical impairment of [Peak Gold's] interests." (Peak Gold agrees with Federal Defendants' position that these counts of the Complaint fail to state a claim upon which relief may be granted, and intends to join their motion to dismiss if and when it is granted intervention).

[5] *Id.* at 1178–79.

[6] Pl.'s Br. at 9 (citing *Portland Audubon Soc'y*); *but see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Contract rights are traditionally protectable interests.")

[7] *See Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), *aff'd sub nom. Greene v. Babbitt*, 64 F.3d 1266 (9th Cir. 1995) ("Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry").

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Plaintiff's argument that the Court can presume that the Corps will adequately represent Peak Gold's interest also lacks merit. The standard for whether a prospective intervenor is adequately represented is a liberal one, which is satisfied if the movant "shows that representation of his interest 'may be' inadequate."[8] The burden to make this showing is "minimal."[9] Plaintiff argues that the Corps' representation is presumptively adequate because the agency and Peak Gold "have the same ultimate objective" to defend the legality of the challenged conduct. But a mere alignment of interests in the outcome of litigation does not establish that the existing party will adequately represent the applicant's interests.[10] Instead, "the intervenor's 'showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest.'"[11]

---

[8] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).
[9] *Id.*
[10] *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (citations omitted)); *accord Driftless Land Conservancy v. Huebsch*, 969 F.3d 742, 748 (7th Cir. 2020) ("[I]t's not enough that a defense-side intervenor 'shares the same goal' as the defendant in the brute sense that they both want the case dismissed.").
[11] *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001)). Here, the Corps both granted the permit and has regulatory authority over the Clean Water Act, differentiating its interests from Peak Gold's more focused interest.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Peak Gold's intervention will also assist the Court in resolving the disputed issues because, as the Ninth Circuit has explicitly recognized, a permittee or lessee is often uniquely situated to provide useful information in a NEPA case.[12] Plaintiff argues that because its claims are brought under the Administrative Procedure Act, and because Peak Gold asserted that Federal Defendants "alone have *full access*" to the administrative record, Peak Gold's unique knowledge concerning the Manh Choh mine project ("Project") should be discounted.[13] Plaintiffs are incorrect. Peak Gold's knowledge of facts alleged in Plaintiff's Complaint concerning its mining operations at Manh Choh, its personnel campus in Tok, and transportation of the ore on Alaska's highways (although

---

[12] *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497 n.9 (9th Cir. 1995) (intervenor "bring[] to the court's attention valuable information not available to or provided by [existing] parties."), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d 1173; *W. Watersheds Project*, 22 F.4th at 840 ("Given its specific financial and property interest, Chesapeake brings a unique perspective to this litigation that existing parties may neglect."); *Snoqualmie Valley Preservation All. v. U.S. Army Corps of Eng'rs*, 2010 WL 11565194, at *2 (W.D. Wash. Oct. 19, 2010) (granting company's motion to intervene in NEPA and Clean Water Act case because it "[might] be more capable than Defendant of providing the construction facts necessary to establish certain affirmative defenses, particularly with respect to possible injunctive relief").

[13] Pl.'s Br. at 5 (emphasis added). As the permit applicant, Peak Gold has many documents that presumably will be in the administrative record (including some it recently obtained through a FOIA request), but may not have all of them and cannot know in advance which ones will be included. *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("Common sense dictates that the agency determines what constitutes the 'whole' administrative record" because "[i]t is the agency that did the 'considering,' and that therefore is in a position to indicate initially which of the materials were 'before' it—namely, were 'directly or indirectly considered.'").

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Peak Gold disputes the relevance of those allegations) do weigh in favor of intervention. The Corps — which has no jurisdiction over mining or transportation — lacks Peak Gold's ability to address these allegations.[14] Plaintiff's argument that Peak Gold's perspective is unnecessary should be rejected for two reasons.

First, although the merits of Plaintiff's claims will be decided on the basis of the administrative record, Plaintiff also seeks equitable relief, including an order that the Corps rescind the permit and "prohibit[] any activity in furtherance of the construction and operation of the Project and related facilities."[15] Extra-record facts are relevant to a court's decision to award such relief on a permanent or interim basis.[16] Peak Gold can provide information about the Project's economic benefits to Tetlin and the region through jobs, revenues to local businesses, and royalty payments to Tetlin (an environmental justice community), all of which would be relevant to any consideration of the equities. Tetlin leased its lands to Peak Gold to obtain financial benefits for its members. Without Peak Gold's participation, the Court would hear only from a Tribe

---

[14] As the Corps stated in the Environmental Assessment, "the proposed highway hauling and transport of other goods in support of the project are non-federal activities that would not affect the location or extent of the regulated activity and are therefore not subject to review by the USACE Alaska District." ECF No. 8-4 at 252.

[15] Compl. 42, Prayer for Relief ¶ 5.

[16] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010); ECF No. 8-1 at 16 (determinations on injunctive relief "would require this Court to consider the equities in addition to the merits").

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

that is 50 miles away from the Manh Choh mine, but would not learn of its benefits to the community where the mine is located and which is most directly impacted by it. Facts outside the administrative record are also relevant to equitable defenses, like laches, that could bar Plaintiff's claims in the first instance.[17]

Second, although Plaintiff asserts that the "after-the-fact information Peak Gold would supply about its current operations" is irrelevant, Pl.'s Br. at 5, its response brief is replete with references to facts that post-date the Corps' September 2, 2022 decision on the permit to fill 5.26 acres of wetlands, including the route of the ore transportation (which is mis-stated); two unattributed, undated photographs; and references to "man camps" which, as demonstrated by Peak Gold's declaration describing its personnel campus, are also misleading.[18] Whether or not this extra-record evidence is germane to the Court's resolution of merits questions, Peak Gold's greater access to facts-on-the-ground can help inform this Court's decision-making and aid its truth-finding function by ensuring that Plaintiff does not misrepresent facts related to Project operations.

Finally, Plaintiff's suggestion that Peak Gold should be limited to participating in

---

[17] *See, e.g., Reno-Sparks Indian Colony v. Haaland*, 663 F. Supp. 3d 1188, 1198 n.5 (D. Nev. 2023), *appeal dismissed*, 2024 WL 2317688 (9th Cir. Jan. 4, 2024) (plaintiff Tribe unlikely to prevail on merits of laches affirmative defense where "SLPT does not explain why it waited to bring this claim until over two years after the ROD issued."); *Friends of Yosemite v. Frizzell*, 420 F. Supp. 390, 397 (N.D. Cal. 1976) (laches barred NEPA claim where plaintiffs sued "almost a year after construction was begun.").
[18] ECF No. 8-3 (Decl. of Shane Parrow) ¶¶ 36-38.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

the remedy phase is baseless. A party that has made the requisite showing for intervention, as Peak Gold has here, is entitled to participate fully in the litigation.[19] Plaintiff misrepresents this Court's holding in *Northern Dynasty Minerals*, which it claims limited the intervenors "to seeking intervention at a later point in the proceedings."[20] In that case, in which a private party challenged agency decisions to deny a Clean Water Act permit, the Court granted intervention to three separate non-governmental groups representing 23 entities.[21] Although the case is not factually on point for several reasons, it is worth noting that the Court's order nonetheless allowed each of the intervenor-defendants to participate in *merits* briefing and did not limit their participation to *remedy* briefing as Plaintiff implies.[22]

---

[19] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 895 (9th Cir. 2011) (ordering district court to "take reasonable steps to put Applicants on equal footing with the original parties so as to ensure their opportunity for participation."); *Ctr. for Env't Sci. Accuracy & Reliability v. Nat'l Park Serv.*, 2016 WL 4524758, at *9 (E.D. Cal. Aug. 29, 2016) ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party."); *Border Power Plant Working Grp. v. Dep't of Energy*, 2005 WL 8173311, at *3 (S.D. Cal. Oct. 12, 2005) (utilities that moved to intervene in challenge to transmission line had "an interest not only in the remedial phase of this case, but also in the determination of the merits of Plaintiff's NEPA and [Clean Air Act] claims. As owners and operators of the transmission lines in question, [the Utilities] have a direct interest in defending the validity of the government's permit approval.").
[20] Pl.'s Br. at 16.
[21] Order Re Motions to Intervene (ECF No. 95), *Northern Dynasty Minerals Ltd. v. U.S. EPA*, 3:24-cv-00059-SLG (Aug. 22, 2024).
[22] *Id.* at 15.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com

Peak Gold has satisfied the requirements for intervention under Rule 24(a) or 24(b).[23] Peak Gold's superior knowledge of the permitting process from the Applicant's perspective, the Project area, the Project's status, and its beneficial economic impacts will help ensure that this Court has the necessary information to resolve any disputed issues of fact related to those topics. Peak Gold's motion to intervene should be granted.

DATED: September 10, 2024.

PERKINS COIE LLP

s/*Eric B. Fjelstad*
Eric B. Fjelstad, Bar No. 9505020
EFjelstad@perkinscoie.com
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
Telephone: 907.279.8561
Stacey Bosshardt, D.C. Bar No. 458645
(*pro hac vice*)
SBosshardt@perkinscoie.com
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: 202.661.5862

**Attorneys for Proposed Intervenor-Defendant Peak Gold, LLC**

---

[23]Plaintiff's only response to Peak Gold's motion, in the alternative, to intervene permissively consists solely of a discussion of when a cause of action under NEPA accrues. Pl.'s Br. at 9-10. That discussion is irrelevant to whether Peak Gold has met the criteria for intervention.

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2024 I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:24-cv-00137 who are registered CM/ECF users will be served by the CM/ECF system.

/s *Eric B. Fjelstad*

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501-1981
+1.907.279.8561 / Facsimile +1.907.276.3108
Eric B. Fjelstad / EFjelstad@perkinscoie.com