# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

VILLAGE OF DOT LAKE, a
federally recognized Indian tribe,

        Plaintiff,

        v.

UNITED STATES ARMY CORPS OF
ENGINEERS, *et al.*,

        Defendants,

    and

PEAK GOLD, LLC,

        Intervenor-
        Defendant.

Case No. 3:24-cv-00137-SLG

## <u>ORDER ON MOTION TO PARTIALLY DISMISS</u>

Before the Court at Docket 11 is a Motion to Partially Dismiss Plaintiff's Complaint filed by the United States Army Corps of Engineers (the "Corps") and Lieutenant General William H. Graham, Jr., in his official capacity as Chief of Engineers and Commanding General of the Corps[1] (collectively, "Federal Defendants"). Plaintiff Village of Dot Lake, a federally recognized Indian tribe (the "Tribe") opposed this motion at Docket 16, to which Federal Defendants replied at Docket 17. Intervenor-Defendant Peak Gold, LLC ("Peak Gold") joined in Federal

---

[1] Lieutenant General Graham assumed this position after the retirement of former Lieutenant General Scott A. Spellmon during the pendency of this litigation. Lieutenant General Graham is thus "automatically substituted as a party." Fed. R. Civ. P. 25(d).

Defendants' motion at Docket 19. Oral argument was not requested and was not necessary to the Court's decision. For the reasons set forth below, Federal Defendants' Motion to Partially Dismiss is **GRANTED**.

## BACKGROUND

This action concerns the Manh Choh Mine, an open pit gold mine being developed by Kinross Gold Corporation and Peak Gold ("the Project").[2] The facts as alleged in the Tribe's Complaint and accepted as true for purposes of this motion to dismiss[3] are as follows: the Project is located approximately 10 miles south of Tok, Alaska, on private land owned by the Upper Tanana Athabascan Village of Tetlin and leased to Peak Gold.[4] The gold ore is not processed on site; instead, it is hauled 248 miles to the Fort Knox gold mine near Fox, Alaska, a route that "passes directly past Dot Lake."[5]

More specifically, this action concerns the issuance of a permit by the Corps for the Project. To achieve its objective of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters," the Federal Water Pollution Control Act Amendments of 1972 (the "Clean Water Act") prohibits

---

[2] Docket 1 at ¶ 2.

[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

[4] Docket 1 at ¶ 2; *see also* Docket 11-1 at 10.

[5] Docket 1 at ¶ 43; *see also* Docket 11-1 at 10.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 2 of 23
Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 2 of 23

the discharge of pollutants except as otherwise authorized by the Act.[6]  Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into navigable waters.[7]  On September 2, 2022, the Corps issued Section 404 permit POA-2013-00286 (the "Pemit") to Peak Gold, allowing it to fill 5.26 acres of wetlands to facilitate the Project.[8]

According to Federal Defendants, all authorized fill was completed by July 2023.[9]  Project construction then commenced in August 2023, and the first pre-production ore was delivered to the Fort Knox processing facility in January 2024.[10]  Production began in the latter half of 2024.[11]

On July 1, 2024, the Tribe brought this action challenging the Corps' issuance of the Permit.[12]  In its Complaint, the Tribe describes the various impacts of the Project, which "is expected to have an active mine life of four to five years," with mining activity occurring "year-round, seven days per week, twenty-four hours a day."[13]  As far as the impacts at the mine site, the Tribe alleges that the two

---

[6] 33 U.S.C. §§ 1251, 1311.

[7] *See* 33 U.S.C. § 1344.

[8] Docket 1 at ¶ 13; *see also* Docket 11-1 at 7.

[9] Docket 11-1 at 7.

[10] Docket 1 at ¶ 19.

[11] *See* Docket 1 at ¶ 19 ("Production is expected to commence in the second half of 2024"); Docket 11-1 at 7 (Federal Defendants noting that "the mine is now operational" on August 23, 2024).

[12] Docket 1.

[13] Docket 1 at ¶ 18.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 3 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 3 of 23

mining pits sit on top of a ridgeline in the Tetlin Hills, with harmful, acid-generating waste rock potentially leaching into ground and surface waters, running into the Tok River watershed to the west and the Tetlin Lake watershed to the east.[14]  The Tok River joins the Upper Tanana River, and the Tetlin National Wildlife Refuge ("TNWR")  is located about 20 miles east of the Project in the Tetlin River/Manh Choh Lake watershed.[15]  The proximity of the TNWR and the Upper Tanana River watershed to the mine site potentially exposes them to harmful effects from the mine operation and ore transport.[16]  The Tribe alleges that these harmful effects may negatively impact important species as well as subsistence activities; the Upper Tanana River watershed and the TNWR are migratory corridors for numerous species of protected birds (including the Bald Eagle, Golden Eagle, Hudsonian Godwit, Lesser Yellowlegs, and the Olive-sided Flycatcher) and provide essential fish habitat for subsistence fishing (with known populations of Arctic Grayling, Burbot, Lake Trout, Northern Pike, and Humpback Whitefish).[17]

The Tribe's Complaint also describes the haul route impacts from trucks running "every 12 minutes, 24 hours a day, 365 days a year for approximately five years or longer."[18]  These impacts include public health and safety risks due to

---

[14] Docket 1 at ¶¶ 22-25.

[15] Docket 1 at ¶¶ 29, 35.

[16] Docket 1 at ¶¶ 34, 37.

[17] Docket 1 at ¶¶ 30-41.

[18] Docket 1 at ¶ 46.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 4 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 4 of 23

increased traffic, increased noise for residents and migratory birds, contamination to adjacent waterbodies caused by fugitive dust, and adverse effects on the air quality in an area already designated by the Environmental Protection Agency ("EPA") as being in "Serious" Nonattainment of the National Ambient Air Quality Standards.[19]  The route crosses two bridges close to Dot Lake that have been designated as needing replacement by the Alaska Department of Transportation; the Tribe is concerned that the increased traffic may lead to their collapse, which would cut the Tribe off from the road system.[20]  The Tribe also expresses concern about the potential increase in violence and crime as well as the strain on community infrastructure posed by the "Man Camps" established for the Project in Tok and North Pole.[21]

The Tribe brings four claims for relief. First, the Tribe brings a claim under the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA") and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA"), asking the Court to rescind the Permit because of the Corps' failure to "evaluate all direct, indirect and cumulative impacts of the Project, including the Man Camps, the mining impacts, the haul route impacts, the impacts to subsistence uses, and the

---

[19] Docket 1 at ¶¶ 43-56.

[20] Docket 1 at ¶¶ 43, 49.

[21] Docket 1 at ¶¶ 57-66.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 5 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 5 of 23

health impacts."[22]  The Tribe brings its second claim for relief pursuant to Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126 ("ANILCA") and the APA, alleging that the Corps acted arbitrarily and capriciously by not conducting a subsistence evaluation under Section 810 of ANILCA.[23]  In its third claim for relief, the Tribe alleges that the Corps acted arbitrarily and capriciously by failing to consult with the Tribe as it was obligated to do under the Corps' Tribal Consultation Policy.[24]  Fourth and finally, the Tribe brings a claim under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), in which it alleges an entitlement to "an award of the costs, attorneys' fees and other expenses it has incurred and will incur in prosecuting the claims asserted in this proceeding."[25]  The Tribe asks for a declaration that Defendants violated NEPA, ANILCA, the APA, and Defendants' own consultation policies; an injunction setting aside the Permit, requiring Defendants to comply with applicable law, and prohibiting any further Project activity; and the award of fees and costs pursuant to the EAJA.[26]

On August 23, 2024, Federal Defendants moved to dismiss the second, third, and fourth claims for failure to state a claim for relief under Federal Rule of

---

[22] Docket 1 at ¶¶ 124-128.

[23] Docket 1 at ¶¶ 102, 129-135.

[24] Docket 1 at ¶¶ 136-140.

[25] Docket 1 at ¶¶ 141-145.

[26] Docket 1 at 42.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 6 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 6 of 23

Civil Procedure 12(b)(6).[27]   The Tribe filed its opposition to the motion on September 24, 2024,[28] to which Federal Defendants replied on October 8, 2024.[29] On October 10, 2024, the Court granted Peak Gold's Motion to Intervene as a defendant.[30]   On October 18, 2024, Peak Gold filed a Joinder in Federal Defendants' Motion to Partially Dismiss Plaintiff's Complaint, agreeing that claims two, three, and four should be dismissed "for the reasons explained in Federal Defendants' motion."[31]

For the reasons set forth herein, the Court dismisses the second claim with prejudice, dismisses the third claim with leave to amend, and dismisses the fourth claim without prejudice.

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[32]   Nonetheless, "the trial court does not have to accept as true

---

[27] Docket 11-1 at 7.

[28] Docket 16.

[29] Docket 17.

[30] Docket 18.

[31] Docket 19.

[32] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 7 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 7 of 23

conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[33]

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), courts "should freely give leave when justice so requires."[34] However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[35] Amendment may be considered futile when the claims lack a cognizable legal basis[36] or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[37]

## DISCUSSION

### 1. ANILCA Claim

The Tribe alleges that the Corps acted arbitrarily and capriciously by failing to conduct a subsistence evaluation pursuant to Section 810 of ANILCA before issuing the Permit.[38] Title VIII of ANILCA recognizes the "unique" importance of

---

[33] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

[34] Fed. R. Civ. P. 15(a)(2).

[35] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[36] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

[37] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation and internal quotation marks omitted).

[38] Docket 1 at ¶¶ 129-35.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 8 of 23
Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 8 of 23

subsistence for Alaska Natives' "physical, economic, traditional, and cultural existence," and establishes that subsistence uses on public lands in Alaska take priority over non-subsistence uses.[39]  Section 810 states, in relevant part:

> In determining whether to *withdraw, reserve, lease, or otherwise permit the use, occupancy, or disposition of public lands* under any provision of law authorizing such actions, the *head of the Federal agency having primary jurisdiction over such lands* or his designee shall evaluate the effect of such use, occupancy, or disposition on subsistence uses and needs, the availability of other lands for the purposes sought to be achieved, and other alternatives which would reduce or eliminate the use, occupancy, or disposition of public lands needed for subsistence purposes.[40]

In its Complaint, the Tribe contends that "[t]he Project will likely cause significant disruption to the traditional subsistence activities of rural residents including the Tribe, including hunting, fishing, and gathering" and "will also lead to environmental degradation," which "will reduce the availability and quality of resources necessary for subsistence," thus alleging that the Corps acted unlawfully by failing  to evaluate the impacts of the Project on those subsistence uses pursuant to Section 810.[41]

Federal Defendants move to dismiss this ANILCA claim, contending that Section 810 does not apply to the Corps' approval of the Permit for two reasons. First, Federal Defendants assert that the Corps is not a federal agency with

---

[39] 16 U.S.C. §§ 3111(1)-(2), 3112(2).

[40] 16 U.S.C. § 3120(a) (emphases added).

[41] Docket 1 at ¶¶ 133-135.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 9 of 23

"primary jurisdiction" over any public lands in Alaska.[42]   And second, Federal Defendants contend that the Corps' decision to approve the Permit did not involve the withdrawal, reservation, lease, occupancy, or other disposition of public lands.[43]

Because the Court finds that the Corps does not have "primary jurisdiction" over the public lands at issue and thus that it was not required to conduct a Section 810 subsistence evaluation, the Court does not reach the second inquiry.

In asserting that the Corps is not a federal agency with "primary jurisdiction" over any public lands in Alaska, Federal Defendants point to statutory language indicating that ANILCA applies to federal land management agencies such as those agencies within the Department of Interior (the National Park Service or the Bureau of Land Management ("BLM"), for example) or the Department of Agriculture (the Forest Service).[44]   Federal Defendants maintain that "[t]he Corps is not a federal land management agency and, in any event, does not manage any public lands at issue in this litigation."[45]   In support, Federal Defendants cite two Ninth Circuit cases, one of which held that the EPA was not required to complete an ANILCA subsistence evaluation because it did not have primary jurisdiction

---

[42] Docket 11-1 at 13-16.

[43] Docket 11-1 at 16-18.

[44] Docket 11-1 at 14-15 (citing 16 U.S.C. §§ 3102(12), 3112(3), 3120(d)).

[45] Docket 11-1 at 15.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 10 of 23

over public lands in Alaska, and the other of which held that neither the EPA nor the Corps had primary jurisdiction over the national monument at issue, which was managed by the Forest Service.[46] The Tribe does not substantively respond to this argument, other than to affirmatively state that the Corps has primary jurisdiction over "the wetlands to be filled."[47]

In *Akiak Native Community v. U.S. Environmental Protection Agency*, the Ninth Circuit held that Section 810(a) was inapplicable to the EPA because "[t]he EPA does not directly manage public lands and is not a federal land management agency."[48] The Ninth Circuit explained that "[f]rom a reading of the statute, it appears that ANILCA applies specifically to federal land management agencies," citing three sections of the statute to support this reading: the first defining "Secretary" to mean the Secretary of the Interior or the Secretary of Agriculture with respect to any unit of the National Forest system; the second declaring that "Federal land managing agencies, in managing subsistence activities on the public lands . . . shall cooperate with adjacent landowners and land managers"; and the third stating that after performing a Section 810 subsistence evaluation, "the head

---

[46] Docket 11-1 at 15-16 (first citing *Akiak Native Cmty. v. U.S. EPA*, 625 F.3d 1162, 1173 (9th Cir. 2010); and then citing *City of Angoon v. Hodel*, 803 F.2d 1016, 1028 (9th Cir. 1986)).

[47] *See* Docket 16 at 5 (citing *John v. United States*, 720 F.3d 1214, 1222 (9th Cir. 2013) (reciting the holding from *Katie John I* that "federal agencies that administer the subsistence priority"—i.e., within the Department of Interior or Department of Agriculture—"are responsible for identifying those waters" (quoting *State of Alaska v. Babbitt*, 72 F.3d 698, 704 (9th Cir. 1995), *adhered to sub nom. John v. United States*, 247 F.3d 1032 (9th Cir. 2001))).

[48] 625 F.3d at 1173.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 11 of 23

Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 11 of 23

of the appropriate Federal agency may manage or dispose of public lands under his primary jurisdiction."[49]  Similar to the EPA, the Corps does not directly manage public lands and therefore is not a federal land management agency.  Also like the EPA, the Corps is not housed under the Department of Interior or the Department of Agriculture with the other traditional federal land management agencies such as BLM or the Forest Service.  And the authority given to the Corps by the Clean Water Act to issue permits for the discharge of dredged or fill material into navigable waters[50] is akin to the authority given to the EPA to issue permits for the discharge of pollutants into navigable waters.[51]  Pursuant to the Ninth Circuit's holding in *Akiak*, this permitting authority does not make the Corps a federal land management agency.

Moreover, even if the Corps' activities were generally subject to ANILCA, the Corps does not have "primary jurisdiction" over any of the lands at issue here, and it was therefore not required to conduct a subsistence evaluation.  As noted above, Section 810 of ANILCA applies to "the head of the Federal agency having

---

[49] *Id.* (citing 16 U.S.C. §§ 3102(12), 3112(3), 3120(d)).

[50] 33 U.S.C. § 1344.

[51] *See* 33 U.S.C. § 1251(d) ("Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency . . . shall administer this chapter."); 33 U.S.C. § 1342(a)(1) ("[T]he Administrator may. . . issue a permit for the discharge of any pollutant.").  Note though that the roles that the EPA and the Corps play in permitting do differ, because "the CWA expressly provides that permitting authority shall be transferred [from the EPA] to state officials upon a showing that the state has met the specified criteria for transfer," and thus the vast majority of states administer their own pollutant discharge program, with the EPA providing oversight. *See Akiak Native Cmty.*, 625 F.3d at 1164 (citing 33 U.S.C. § 1342(b)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 12 of 23

Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 12 of 23

primary jurisdiction" over the affected public lands.[52]  In *City of Angoon v. Hodel*, the EPA and the Corps issued Clean Water Act permits for the construction of a log transfer facility.[53]  Angoon argued that the issuance of the permits required subsistence evaluations under Section 810.[54]  The Ninth Circuit disagreed and held that neither the EPA nor the Corps had primary jurisdiction over the lands at issue, which were privately-held lands.[55]  The Circuit also rejected Angoon's argument that the "spillover effect" on the subsistence use of the adjacent public lands brought the government's actions within Section 810.[56]  The Circuit held that "[t]he plain language of the statute . . .  cannot fairly be read to require such an evaluation for actions regarding private lands," and that Angoon's argument about the spillover use of public lands "seems a distinction without a difference."[57]  Likewise, Section 810 is inapplicable to the wetlands that were filled here, which are privately owned by the Village of Tetlin.[58]  And in any event, the Corps does not have primary jurisdiction over the pertinent public lands;[59] the TNWR is

---

[52] 16 U.S.C. § 3120(a).

[53] 803 F.2d at 1019.

[54] *Id.* at 1027.

[55] *Id.* at 1027-28.

[56] *Id.*

[57] *Id.* at 1028.

[58] *See* Docket 1 at ¶ 67; Docket 11-2 at 4 (Permit POA-2013-00286).

[59] *See* Docket 16 at 5 (the Tribe discussing the TNWR and the "BLM-owned land on the edge of the Site").

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 13 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 13 of 23

primary jurisdiction" over the affected public lands.[52]  In *City of Angoon v. Hodel*, the EPA and the Corps issued Clean Water Act permits for the construction of a log transfer facility.[53]  Angoon argued that the issuance of the permits required subsistence evaluations under Section 810.[54]  The Ninth Circuit disagreed and held that neither the EPA nor the Corps had primary jurisdiction over the lands at issue, which were privately-held lands.[55]  The Circuit also rejected Angoon's argument that the "spillover effect" on the subsistence use of the adjacent public lands brought the government's actions within Section 810.[56]  The Circuit held that "[t]he plain language of the statute . . .  cannot fairly be read to require such an evaluation for actions regarding private lands," and that Angoon's argument about the spillover use of public lands "seems a distinction without a difference."[57]  Likewise, Section 810 is inapplicable to the wetlands that were filled here, which are privately owned by the Village of Tetlin.[58]  And in any event, the Corps does not have primary jurisdiction over the pertinent public lands;[59] the TNWR is

---

[52] 16 U.S.C. § 3120(a).

[53] 803 F.2d at 1019.

[54] *Id.* at 1027.

[55] *Id.* at 1027-28.

[56] *Id.*

[57] *Id.* at 1028.

[58] *See* Docket 1 at ¶ 67; Docket 11-2 at 4 (Permit POA-2013-00286).

[59] *See* Docket 16 at 5 (the Tribe discussing the TNWR and the "BLM-owned land on the edge of the Site").

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 13 of 23

managed by the Fish and Wildlife Service,[60] and the adjacent BLM-managed lands, are, as the name implies, managed by BLM.

Because the Corps does not have primary jurisdiction over any of the lands at issue here, it was not required to conduct a Section 810 subsistence evaluation, and there is therefore no legal basis for the Tribe's ANILCA claim. Moreover, because no set of facts could be added by amendment consistent with the Complaint that could state a viable ANILCA claim against the Corps, amendment of this claim would be futile. Therefore, the Court does not grant the Tribe leave to amend its ANILCA claim and this claim is dismissed with prejudice.

### 2. Failure to Consult Claim

In claim three, the Tribe alleges that the Corps violated the APA by failing to consult with it and with other federally recognized tribes "in a manner that satisfied their obligations under the Corps' . . . Tribal Consultation Policy."[61] The Corps' 2012 Tribal Consultation Policy ("2012 Policy")[62] recognizes that consultation with

---

[60] *Tetlin National Wildlife Refuge*, U.S. Fish & Wildlife Serv., https://www.fws.gov/refuge/tetlin [https://perma.cc/32L7-FGM3].

[61] Docket 1 at ¶¶ 136-40.

[62] In its Complaint, the Tribe references the December 5, 2023 Tribal Consultation Policy Update as the source for the Corps' internal policy. Docket 1 at ¶¶ 116-17. As Federal Defendants rightly state, this policy was issued approximately 15 months after the issuance of the Permit. Docket 11-1 at 19. In response, the Tribe asks the Court to "allow an amendment or correction of the complaint because the November 1, 2012 Consultation Policy . . . is substantially similar to the parts of the 2023 Update cited in the complaint, which leaves the basis of the Tribe's claims intact, and would not prejudice the Corps in any way." Docket 16 at 11. Because Federal Defendants do not appear to take issue with the substitution, which they contend is "futile" in any case, *see* Docket 17 at 7, the Court considers the 2012 Policy here.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 14 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 14 of 23

affected tribes is "an integral, invaluable process" of the Corps' implementation and planning that is triggered when activities have the "potential to significantly affect protected tribal resources, tribal rights . . . and Indian lands."[63] The Tribe maintains that the "Corps' after-the-fact, web-based government-to-government meeting with Dot Lake was not meaningful consultation."[64]

Federal Defendants contend that the 2012 Policy cannot form the basis of a claim because it "constitutes an internal agency guidance document that lacks the force and effect of law."[65] Federal Defendants point to Ninth Circuit caselaw holding that a court can "review an agency's alleged noncompliance with an agency pronouncement only if that pronouncement actually has the force and effect of law."[66] To have the "force and effect of law," the agency pronouncement must first "prescribe substantive rules" rather than general statements of policy, and second "conform to certain procedural requirements."[67] The 2012 Policy, according to Federal Defendants, satisfies neither requirement.[68]

In its opposition, the Tribe cites two cases from the Supreme Court and one from the Eighth Circuit in which the reviewing courts considered whether the

---

[63] Dep't of the Army, U.S. Army Corps of Eng'rs, Tribal Consultation Policy 3 (2012).

[64] Docket 1 at ¶ 123.

[65] Docket 17 at 7-8; *see also* Docket 11-1 at 20.

[66] Docket 17 at 7-8 (quoting *Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633, 641 (9th Cir. 2023)).

[67] Docket 17 at 8 (quoting *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996)).

[68] Docket 17 at 8-9.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 15 of 23

Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 15 of 23

agency action "conform[ed] to the agency's own internal procedures."[69]  The Tribe also cites two cases from the District of South Dakota, noting that the court there "found that the BIA had violated consultation requirements clearly established by federal law or *by specific BIA policy*."[70]

In *Western Radio Services Co. v. Espy*, the Ninth Circuit stated unequivocally that it "will review an agency's alleged noncompliance with an agency pronouncement only if that pronouncement actually has the force and effect of law. [It] will not review allegations of noncompliance with an agency statement that is not binding on the agency."[71]  To have the force and effect of law:

> the agency pronouncement must (1) prescribe substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.[72]

---

[69] Docket 16 at 10-11 (first citing *Morton v. Ruiz*, 415 U.S. 199, 234-35 (1974); then citing *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 713 (8th Cir. 1979); and then citing *United States v. Caceres*, 440 U.S. 741, 751 n.14 (1979)).

[70] Docket 16 at 10 (emphasis in original) (first citing *Yankton Sioux Tribe v. Kempthorne*, 442 F. Supp. 2d 774 (D. S.D. 2006); and then citing *Lower Brule Sioux Tribe v. Deer*, 911 F. Supp. 395 (D. S.D. 1995)).

[71] 79 F.3d at 900 (citing *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982)).

[72] *Id.* at 901 (emphasis in original) (quoting *Fifty-Three Parrots,* 685 F.2d at 1136).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 16 of 23

In *Espy*, the Ninth Circuit held that a Forest Service manual and handbook did not satisfy either requirement and therefore did not have the force of law.[73]  First, the Circuit held that a manual which is essentially a "compilation of guidelines" does not prescribe substantive rules.[74]  And second, it held that neither the manual nor the handbook were issued pursuant to the procedural requirements of the APA— they were not published in the Federal Register or the Code of Federal Regulations and were not subjected to notice and comment rulemaking—nor were they promulgated pursuant to a different congressional authority.[75]

Here, the 2012 Policy does not satisfy either Ninth Circuit requirement and therefore lacks the force and effect of law.  First, the 2012 Policy provides general statements of policy and does not "affect[] individual rights and obligations";[76] to the contrary, it explicitly states that it "is not intended to, and does not grant, expand, create, or diminish any legally enforceable rights, benefits, or trust responsibilities, substantive or procedural, not otherwise granted or created under existing law."[77]  And second, the 2012 Policy does not satisfy the procedural requirements of the APA.  It was not published in the Federal Register or the Code

---

[73] *Id.*

[74] *Id.* (quoting *Lumber, Prod. and Indus. Workers Log Scalers Local 2058 v. United States,* 580 F. Supp. 279, 283 (D. Or. 1984)).

[75] *Id.*

[76] *See id.* at 901 (quoting *Fifty-Three Parrots,* 685 F.2d at 1136).

[77] Dep't of the Army, U.S. Army Corps of Eng'rs, Tribal Consultation Policy 6 n.2 (2012).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 17 of 23

Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 17 of 23

of Federal Regulations and was not subjected to notice and comment rulemaking. Nor was it "promulgated pursuant to a specific statutory grant of authority";[78] the policy states that its procedures are mandated by an executive order and a presidential memorandum, neither of which come from Congress.[79]

The cases cited by the Tribe do not persuade the Court to otherwise find. The two Supreme Court cases relied upon by the Tribe simply stand for the proposition that agencies must follow their own procedures "even where the internal procedures are possibly more rigorous than otherwise would be required" by federal law.[80] That requirement has no bearing on whether an agency promulgation prescribes substantive rules or conforms to procedural requirements.[81] The Court is also not persuaded by the Tribe's citation to *Oglala Sioux Tribe of Indians v. Andrus*, which is an Eighth Circuit case that held that the agency's action was "procedurally defective" because it did not comply with an

---

[78] *See Espy*, 79 F.3d at 901 (quoting *Fifty-Three Parrots,* 685 F.2d at 1136).

[79] Dep't of the Army, U.S. Army Corps of Eng'rs, Tribal Consultation Policy 1 (2012). In its response, the Tribe notes that there are other internal sources of the Corps' consultation obligation, including the Tribal Policy Principles published in 1998. Docket 16 at 9. The 1998 Policy—which provides six "tribal policy principles" for "interim guidance" based on a directive from the president—fails for the same reasons that the 2012 Policy does. *See* U.S. Army Corps of Eng'rs, Memorandum for Commanders, Major Subordinate Commands and District Commands (1998).

[80] *Morton*, 415 U.S. at 235; *Caceres*, 440 U.S. at 751 & n.14 (noting that while the IRS "was not required by the Constitution to adopt these regulations," it did "not necessarily follow . . . as a matter of either logic or law, that the agency had no duty to obey them").

[81] In one of the cases, the Supreme Court ultimately held that the agency manual lacked the force of law because it was not published according to APA procedure. *Morton*, 415 U.S. at 235-36.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 18 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 18 of 23

internal policy requiring tribal consultation.[82]  In that case, "[t]he government d[id] not argue that the [agency] is not bound by the consultation guidelines"; instead, it only contended that the consultation requirements did not apply to the particular agency action at issue.[83]  The Ninth Circuit later noted that it was this concession by the government that distinguished *Oglala Sioux* from the general rule that an agency's guidelines do not establish legal standards that can be enforced against the agency.[84]  As for the two District of South Dakota cases cited by the Tribe, one is distinguishable in that the court found that the tribe was likely to succeed on the merits of its claim, as both Congress and the agency had articulated a policy mandating consultation.[85]  And in the other, the court rejected the Ninth Circuit's interpretation of *Oglala Sioux*, and held that that Eighth Circuit case stood for the proposition that an agency is generally not permitted to ignore its own policies and directives.[86]  This Court, however, is bound by Ninth Circuit precedent.

In its opposition, the Tribe asserts that these Corps policies "are not the sole legal basis for the Tribe's failure to consult claim."[87]  The Tribe posits that the Corps' failure to meaningfully consult with tribes may also violate the agency's

---

[82] 603 F.2d at 714.

[83] *Id.* at 718.

[84] *Hoopa Valley Tribe v. Christie*, 812 F.2d 1097, 1103 (9th Cir. 1986) (citing *Oglala Sioux*, 603 F.2d at 718).

[85] *Yankton Sioux Tribe*, 442 F. Supp. 2d at 784.

[86] *Lower Brule Sioux Tribe*, 911 F. Supp. at 399-400.

[87] Docket 16 at 10.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 19 of 23

Case 3:24-cv-00137-SLG     Document 23     Filed 03/19/25     Page 19 of 23

general trust responsibility.[88] The Tribe points to the fact that its "Complaint cites no fewer than twenty [Presidential Memoranda, Executive Orders, and agency policies] applicable to the Corps" that codify this trust obligation.[89]

Federal Defendants respond that this "generalized appeal to the Federal Government's tribal trust responsibility does not salvage" the Tribe's failure to consult claim, pointing to Ninth Circuit precedent that holds that the trust obligation "does not impose a duty on the government to take action beyond complying with generally applicable statutes and regulations."[90] Federal Defendants also take issue with the "litany" of authorities referenced in the Tribe's Complaint because the Tribe "fail[ed] to specify how any of those authorities are relevant to the current litigation or have allegedly been breached."[91]

The Court finds that the Complaint's reference to a general trust obligation and its inventory of executive orders and policies does not state a viable failure to consult claim. "To maintain [a breach-of-trust claim], the Tribe must establish,

---

[88] Docket 16 at 10 (first citing *Oglala Sioux*, 603 F.2d at 721; and then citing *Wyoming v. U.S. Dep't of Interior*, 136 F. Supp. 3d 1317, 1344 (D. Wyo. 2015)). According to the explanatory parenthetical provided by the Tribe, it is relying on the District of Wyoming case for the proposition that the court there found "merit in the Ute Indian Tribe's argument that the BLM failed to consult with the Tribe on a government-to-government basis in accordance with its own policies and procedures." The Court notes that the BLM's compliance with internal policies does not appear to speak to the Tribe's point about a general trust responsibility, and that the order was anyway vacated as moot by the Tenth Circuit. *See Wyoming v. Sierra Club*, Case No. 15-8126, 2016 WL 3853806, at *1 (10th Cir. July 13, 2016).

[89] Docket 16 at 8 (citing Docket 1 at ¶¶ 112-15).

[90] Docket 17 at 11 (quoting *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir. 2006)).

[91] Docket 11-1 at 23; *see also* Docket 17 at 11.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 20 of 23

among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States."[92]  While some of the authorities cited by the Tribe may serve to impose this duty, Rule 8(a) of the Federal Rules of Civil Procedure—which requires "a short and plain statement of the claim showing that the pleader is entitled to relief"—demands considerably more specificity.  In its Complaint, the Tribe focuses its claim for relief on the Corps' internal policies,[93] and in its opposition, the Tribe attempts to expand on this by referencing the list of other authorities it cited in its Complaint.[94]  The Court agrees with Federal Defendants that the Tribe must provide "a more definite statement that clearly sets out the source of authority the Tribe relies on to support its consultation claim."[95]  Therefore, the Court dismisses the Tribe's failure to consult claim with leave for the Tribe to amend its claim to specifically identify the source(s) of authority for the consultation obligation.

---

[92] *Arizona v. Navajo Nation*, 599 U.S. 555, 563 (2023); *see also Gros Ventre Tribe*, 469 F.3d at 810.

[93] *See* Docket 1 at ¶¶ 136-40.

[94] Docket 16 at 8 (citing Docket 1 at ¶¶ 112-15).

[95] Docket 11-1 at 25.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 21 of 23

Case 3:24-cv-00137-SLG    Document 23    Filed 03/19/25    Page 21 of 23

### 3. EAJA Claim

The Tribe brings its fourth claim under the EAJA, pursuant to which it alleges an entitlement to "an award of the costs, attorneys' fees and other expenses it has incurred and will incur in prosecuting the claims asserted in this proceeding."[96]

The Court dismisses this claim without prejudice. "[T]he EAJA does not provide an independent cause of action for litigants in federal court; instead, it simply 'authorizes the payment of fees to the prevailing party in an action against the United States.'"[97] As both the Tribe and Federal Defendants acknowledge, a "party seeking fees and costs under the EAJA does not need to affirmatively assert a claim for relief [under the EAJA] in a pleading."[98] Should the Tribe prevail on the merits, it may then move to recover fees under the EAJA.

## CONCLUSION

For the foregoing reasons, the Motion to Partially Dismiss at Docket 11 is **GRANTED**. The Tribe's second claim for relief pursuant to ANILCA is **DISMISSED with prejudice.** The Tribe's third claim for relief related to Federal Defendants' failure to consult is **DISMISSED with leave to amend** the claim to identify the specific source(s) of authority for the consultation obligation. And the Tribe's fourth

---

[96] Docket 1 at ¶¶ 141-45.

[97] *Thomas v. Paulson*, 507 F. Supp. 2d 59, 62 n.2 (D.D.C. 2007) (quoting *Scarbrough v. Principi*, 541 U.S. 401, 405 (2004)).

[98] Docket 16 at 15 (citing *United States v. $12,248 U.S. Currency*, 957 F.2d 1513 (9th Cir. 1992)); Docket 17 at 12.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 22 of 23

claim for relief pursuant to the EAJA is **DISMISSED without prejudice** to the Tribe moving to recover fees should it prevail on the merits.

Within 14 days of the date of this order, Plaintiff shall either file an amended complaint that is consistent with the terms of this order or a notice that Plaintiff shall proceed solely on its First Claim for Relief of its Complaint.

DATED this 19th day of March, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Partially Dismiss
Page 23 of 23

Case 3:24-cv-00137-SLG      Document 23      Filed 03/19/25      Page 23 of 23