# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

VILLAGE OF DOT LAKE, a federally recognized Indian tribe,

        Plaintiff,

      v.

UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*,

        Defendants,

    and

PEAK GOLD, LLC,

        Intervenor-Defendant.

Case No. 3:24-cv-00137-SLG

## ORDER ON MOTION TO DISMISS CLAIM TWO OF PLAINTIFF'S AMENDED COMPLAINT

Before the Court at Docket 34 is Intervenor-Defendant Peak Gold, LLC's ("Peak Gold") Motion to Dismiss Claim Two of Plaintiff's Amended Complaint.[1] Plaintiff Village of Dot Lake, a federally recognized Indian tribe ("Dot Lake" or the "Tribe"), opposed this motion at Docket 36, to which Peak Gold replied at Docket 41. Oral argument was not requested and was not necessary to the Court's decision. For the reasons set forth below, Peak Gold's Motion to Dismiss Claim Two of Plaintiff's Amended Complaint is **GRANTED**.

---

[1] *See* Docket 34-1 (Peak Gold's Mem. in Supp. of Mot. to Dismiss Claim Two of Pl.'s Am. Compl.).

# BACKGROUND

The Court assumes familiarity with its prior decisions, as well as the factual and procedural background they provide. The facts and procedural background, as directly relevant to these motions, are as follows[2]:

This action concerns the issuance of a permit by the United States Army Corps of Engineers (the "Corps") for the Manh Choh Mine, an open pit gold mine developed by Kinross Gold Corporation and Peak Gold ("the Project").[3] The Project is located approximately 10 miles south of Tok, Alaska, on private land leased by the Upper Tanana Athabascan Village of Tetlin to Peak Gold.[4] The gold ore is not processed on site; instead, it is hauled 248 miles to the Fort Knox gold mine near Fox, Alaska, a route that "passes directly past Dot Lake."[5]

Section 404 of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act") authorizes the Corps to issue permits for the discharge of dredged or fill material into navigable waters.[6] On September 2, 2022, the Corps issued Section 404 permit POA-2013-00286

---

[2] The facts as alleged in Dot Lake's First Amended Complaint are accepted as true for purposes of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

[3] Docket 25 at ¶ 2.

[4] Docket 25 at ¶ 2.

[5] Docket 25 at ¶ 43.

[6] *See* 33 U.S.C. § 1344.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 2 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 2 of 23

(the "Permit") to Peak Gold, allowing it to fill 5.26 acres of wetlands to facilitate the Project.[7] Prior to issuing the Permit, Federal Defendants conducted an Environmental Assessment ("EA") to analyze the environmental impact of the Project, but they did not prepare an Environmental Impact Statement ("EIS").[8]

According to Peak Gold, all authorized fill was completed by July 2023.[9] Project construction then commenced in August 2023, and the first pre-production ore was delivered to the Fort Knox processing facility in January 2024.[10] Production began in the latter half of 2024.[11]

On July 1, 2024, Dot Lake brought this action challenging the Corps' issuance of the Permit.[12] In its initial Complaint, the Tribe brought four claims for relief. First, the Tribe brought a claim under the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.* ("NEPA") and the Administrative Procedure Act, 5

---

[7] Docket 25 at ¶ 13; Docket 11-2 (the Permit).

[8] Docket 25 at ¶ 96 ("Here, . . . the Corps did not conduct an EIS despite the significant direct, indirect and cumulative impacts associated with the Project as described in the project purpose."); Docket 34-1 at 18 (contending that the Corps published an EA rather than an EIS).

An agency prepares an EA "for a proposed action that is not likely to have significant effects [on the environment] or when the significance of the effects is unknown unless the agency finds that a categorical exclusion is applicable," 40 C.F.R. § 1501.5 (2024), whereas an agency prepares a more detailed EIS for "major Federal actions significantly affecting the quality of the human environment." *See* 42 U.S.C. § 4332.

[9] Docket 34-1 at 7.

[10] Docket 25 at ¶ 19.

[11] *See* Docket 25 at ¶ 19 ("Production is expected to commence in the second half of 2024."); Docket 11-1 at 7 (Federal Defendants noting that "the mine is now operational" on August 23, 2024).

[12] Docket 1.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 3 of 23

U.S.C. §§ 701 *et seq.* ("APA") for the Corps' failure to evaluate all impacts of the Project.[13]  The Tribe brought its second claim for relief pursuant to Title VIII of the Alaska National Interest Lands Conservation Act, 16 U.S.C. §§ 3111-3126 ("ANILCA") and the APA, alleging that the Corps acted arbitrarily and capriciously by not conducting a subsistence evaluation.[14]  In its third claim for relief, the Tribe alleged that the Corps acted arbitrarily and capriciously by failing to consult with the Tribe as it was obligated to do under the Corps' Tribal Consultation Policy.[15] Fourth, the Tribe brought a claim under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), alleging an entitlement to an award of costs, fees, and expenses.[16]

On August 23, 2024, the Corps and Lieutenant General William H. Graham, Jr., in his official capacity as Chief of Engineers and Commanding General of the Corps[17] (collectively, "Federal Defendants") moved to dismiss the second, third, and fourth claims.[18]  On October 10, 2024, the Court granted Peak Gold's Motion to Intervene as a defendant.[19]  On October 18, 2024, Peak Gold filed a Joinder in

---

[13] Docket 1 at ¶¶ 124-128.

[14] Docket 1 at ¶¶ 102, 129-135.

[15] Docket 1 at ¶¶ 136-140.

[16] Docket 1 at ¶¶ 141-145.

[17] Note that Lieutenant General Graham assumed this position after the retirement of former Lieutenant General Scott A. Spellmon during the pendency of this litigation.  Lieutenant General Graham is thus "automatically substituted as a party." Fed. R. Civ. P. 25(d).

[18] Docket 11-1 at 7.

[19] Docket 18.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 4 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 4 of 23

Federal Defendants' Motion to Partially Dismiss Plaintiff's Complaint.[20]  On March 19, 2025, the Court granted the motion to dismiss, dismissing the second ANILCA claim with prejudice, dismissing the third failure to consult claim with leave to amend, and dismissing the fourth EAJA claim without prejudice.[21]

On April 1, 2025, the Tribe filed its First Amended Complaint in which it asserts two claims.[22]  First, it realleges its NEPA claim for the Corps' failure to "evaluate all direct, indirect and cumulative impacts of the Project, including the Man Camps, the mining impacts, the haul route impacts, the impacts to subsistence uses, and the health impacts."[23]  And second, it brings an amended failure to consult claim, alleging that Federal Defendants failed to consult with the Tribe in a manner that satisfied their obligations under various Army and NEPA regulations, a 1994 White House Memorandum, Executive Order 13175, and the Corps' Tribal Consultation Policy.[24]

On May 2, 2025, Peak Gold filed a Motion to Dismiss Claim Two of Plaintiff's Amended Complaint, asserting that "the current Complaint fails to cure the defects in the prior version; the Complaint still does not identify a regulation, statute, or

---

[20] Docket 19.

[21] Docket 23 at 22-23.

[22] Docket 25.

[23] Docket 25 at ¶¶ 125-29.

[24] Docket 25 at ¶¶ 130-34.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 5 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 5 of 23

treaty that could support its breach of trust claim."[25] On May 9, 2025, Federal Defendants filed their Answer to Plaintiff's Amended Complaint.[26] The Tribe responded in opposition to Peak Gold's Motion to Dismiss on May 23, 2025, contending first that "Peak Gold cannot move to dismiss the claims against the Corps on the Corps' behalf," and second that "[t]he Tribe has satisfied its burden to plead its [consultation] claim with specificity."[27] Peak Gold replied on June 6, 2025.[28]

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[30]

---

[25] Docket 34-1 at 9-10.

[26] Docket 35. Federal Defendants did not join in Peak Gold's Motion to Dismiss.

[27] Docket 36 at 6-7.

[28] Docket 41.

[29] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[30] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 6 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 6 of 23

When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), courts "should freely give leave when justice so requires."[31] However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[32] Amendment may be considered futile when the claims lack a cognizable legal basis[33] or when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."[34]

## DISCUSSION

### I. Peak Gold May Properly Move to Dismiss Claim Two.

As a threshold matter, Dot Lake asserts in its opposition to Peak Gold's Motion to Dismiss that given that the "Corps answered the First Amended Complaint and did not move to dismiss the consultation claim against it," "Peak Gold cannot move to dismiss the claims against the Corps on the Corps' behalf."[35] To support this, Dot Lake points to *Pantalion v. ResMAE Mortgage Corporation*, in

---

[31] Fed. R. Civ. P. 15(a)(2).

[32] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[33] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

[34] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation and internal quotation marks omitted).

[35] Docket 36 at 6.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 7 of 23

Case 3:24-cv-00137-SLG    Document 47    Filed 07/31/25    Page 7 of 23

which an Eastern District of California magistrate judge recommended that the moving defendants be barred from moving to dismiss a particular claim because that claim was "addressed solely to" a different defendant, and to *Graham v. Caliber Home Loans, Inc.*, in which a Northern District of Georgia magistrate judge recommended that one defendant be barred from moving for dismissal on behalf of another defendant.[36]

In its reply, Peak Gold contends that it properly moved to dismiss the consultation claim.[37] First, Peak Gold notes that Dot Lake cited an Eastern District of California case in which the court allowed a defendant to seek dismissal of a claim asserted only against a co-defendant based on the court's authority to dismiss a case *sua sponte*.[38] Next, Peak Gold distinguishes the "two unpublished report-and-recommendation rulings" relied upon by Dot Lake, noting that "neither case is an APA case," "neither case involved a motion to dismiss a claim brought by an *intervening* co-defendant, which by definition has a judicially determined, cognizable interest in at least one claim in the litigation," and stating further that

---

[36] Docket 36 at 6-7 (first citing *Pantalion v. ResMAE Mortg. Corp.*, Case No. Civ-S-09-2262-MCE-GGHPS, 2010 WL 1949444, at *4 (E.D. Cal. May 13, 2010), *adopted by* Case No. 2:09-cv-02262-MCE-GGH, 2010 WL 2546084 (E.D. Cal. June 23, 2010); and then citing *Graham v. Caliber Home Loans, Inc.*, Case No. 1:20-CV-958-LMM-CCB, 2021 WL 2557214, at *21 (N.D. Ga. Jan. 18, 2021), *adopted in part, rejected in part by* Case No. 1:20-CV-958-LMM-CCB, 2021 WL 2557502 (N.D. Ga. Mar. 9, 2021)).

[37] Docket 41 at 3-8.

[38] Docket 41 at 3-4; Docket 36 at 7 n.2; *Freeman v. BNC Mortg. Inc.*, Case No. 2:15-cv-00596-MCE-CKD, 2015 WL 3795666, at *4 (E.D. Cal. June 17, 2015) (citing *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 8 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 8 of 23

both cases are "factually distinguishable because in one case the defendant that sought to dismiss the claim lacked a cognizable interest in that claim, and in the other, the judge . . . nonetheless recommended dismissing the claim for the reasons asserted in the motion."[39]  Peak Gold instead urges reliance on three APA cases in which intervenors moved to dismiss claims pled solely against federal agencies.[40]  Peak Gold contends further that Dot Lake's position "frustrate[s] the purpose of intervention, which grants an intervenor full status as a litigant in order to protect its interests that might be impaired by the litigation."[41]  Finally, Peak Gold points to the fact that when the Court granted intervention, it recognized Peak Gold's "substantial interest in the outcome" of the proceedings.[42]

The Court finds that Peak Gold may properly move for dismissal of the failure to consult claim.  The Court agrees with the Eastern District of California court that "[i]f the Court has the authority to dismiss [a] cause of action sua sponte, then

---

[39] Docket 41 at 4 (emphasis in original) (first citing *Graham*, 2021 WL 2557502, at *2, *21-22; and then citing *Pantalion*, 2010 WL 1949444, at *4, *6-7).

[40] Docket 41 at 6 (first citing *Border Power Plant Working Grp. v. Dep't of Energy*, Case No. 02-cv-513-IEG, 2006 WL 8455391, at *1 n.1 (S.D. Cal. Mar. 29, 2006); then citing *Defs. of Wildlife v. Bureau of Ocean Energy Mgmt., Regul., & Enf't*, 791 F. Supp. 2d 1158, 1164 n.5, 1175-76 (S.D. Ala. 2011); and then citing *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1158 (D. Minn. 2010)).

[41] Docket 41 at 6-7 (first citing Fed. R. Civ. P. 24; then citing 7C Wright, Miller & Kane's Federal Practice & Procedure § 1920 (3d ed. 2007) ("Unless conditions have been imposed, the intervenor is treated as if the intervenor were an original party and has equal standing with the original parties . . . [T]he intervenor is entitled to litigate fully on the merits once intervention has been granted. The intervenor may move to dismiss the proceeding . . . ." (emphasis omitted)); and then citing *Cahill v. Insider, Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) ("By entering into the litigation here, [the intervenor] obtained the same rights and obligations that any other party would obtain.")).

[42] Docket 41 at 7-8 (quoting Docket 18 at 6).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 9 of 23

surely it may do so" upon a defendant's "mo[tion] to dismiss a claim asserted only against a co-defendant."[43]  The Court is further persuaded by the APA cases cited by Peak Gold; in each case, the district court ruled on the intervenors' motion to dismiss claims pled solely against the federal defendants even when the federal defendants did not participate in the briefing.[44]  For the foregoing reasons, the Court finds that Peak Gold may move to dismiss the failure to consult claim brought against Federal Defendants.

## II.    The Tribe Fails to Sufficiently Allege a Failure to Consult Claim.

As indicated above, the Court previously dismissed Dot Lake's failure to consult claim with leave to amend, finding that the Corps' 2012 Tribal Consultation Policy ("2012 Policy") "lack[ed] the force and effect of law" and therefore could not sustain a failure to consult claim, and that the "Complaint's reference to a general

---

[43] *Freeman*, 2015 WL 3795666, at *4 (citing *Seismic Reservoir 2020*, 785 F.3d at 335).

[44] *Defs. of Wildlife*, 791 F. Supp. 2d at 1161, 1175-78 (in a case brought by an environmental plaintiff against federal defendants for failure to comply with NEPA, the Endangered Species Act, and the APA, noting that the petroleum, oil, and drilling association intervenors moved for dismissal of two claims "as to which the Federal Defendants did not move for dismissal," and nonetheless deciding the motion); *Sierra Club*, 689 F. Supp. 2d at 1151-52, 1158-60 (in a case brought by an environmental plaintiff against federal defendants for failure to comply with NEPA and the APA, noting that "Federal Defendants and [the energy company intervenor] have each moved separately to dismiss Plaintiffs' First Amended Complaint," and nonetheless deciding the intervenor's motion, though ultimately finding that the arguments involved factual issues better suited to the summary judgment stage); *Border Power Plant Working Grp.*, 2006 WL 8455397, at *1 & n.1 (citing *Border Power Plant Working Grp. v. Dep't of Energy*, Case No. 02-cv-513-IEG-POR, 2006 WL 8455397 (S.D. Cal. Feb. 8, 2006) (in a case brought by an environmental plaintiff against federal defendants for failure to comply with NEPA, the Clean Air Act, and the APA, noting that power company intervenors had previously moved to dismiss a claim in which federal defendants had "not participate[d] in the briefing," and discussing the court's prior decision on the motion)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 10 of 23

trust obligation and its inventory of executive orders and policies" was likewise insufficient.[45]  The Court dismissed "the Tribe's failure to consult claim with leave for the Tribe to amend its claim to specifically identify the source(s) of authority for the consultation obligation."[46]

In its First Amended Complaint, the Tribe brings an amended failure to consult claim.[47]  Dot Lake begins by referencing the federal government's common-law trust responsibility and provides a list of over fifteen Presidential Memoranda, Executive Orders, and agency policies codifying that obligation—a list that is seemingly identical to the one it provided in its initial Complaint.[48]  Dot Lake then references four groups of authorities to support its consultation claim. First, Dot Lake cites a January 26, 2021 Presidential Memorandum entitled Tribal Consultation and Strengthening Nation-to-Nation Relationships, which reaffirmed Executive Order 13175, Consultation and Coordination with Indian Tribal Governments.[49]  Second, Dot Lake cites to Army Regulation 200-1, which requires the Army to consult with tribal governments, and to various Department of the Army regulations found in Title 32, Part 65 of the Code of Federal Regulations

---

[45] Docket 23 at 17, 20.

[46] Docket 23 at 21.

[47] Docket 25 at ¶¶ 130-34.

[48] Docket 25 at ¶ 104; *compare* Docket 25 at ¶ 105, *with* Docket 1 at ¶ 112.

[49] Docket 25 at ¶¶ 107-08, 131 (first citing Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships, 86 Fed. Reg. 7491, 7491-92 (Jan. 29, 2021); and then citing Exec. Order No. 13175, 65 Fed. Reg. 67249, 67250 (Nov. 9, 2000)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 11 of 23

("C.F.R.").[50]  Third, Dot Lake cites to several Council on Environmental Quality ("CEQ") regulations implementing NEPA that require agencies to consult with tribes.[51]  And fourth, Dot Lake again cites to the Corps' October 4, 2012 Tribal Consultation Policy in which it "affirmed its commitment to, and its processes for engaging in consultation with federally recognized Tribes and Alaska Native Corporations."[52]  The Court previously dismissed Dot Lake's failure to consult claim based on the fact that the 2012 Policy lacked the force and effect of law.[53]  Dot Lake did not move for reconsideration of that prior order, and the Court declines to revisit the sufficiency of the 2012 Policy again here.  The Court addresses each of the remaining three categories of authorities in turn.

### 1. Presidential Memorandum and Executive Order

In its First Amended Complaint, Dot Lake cites to the January 26, 2021 President Memorandum entitled Tribal Consultation and Strengthening Nation-to-

---

[50] Docket 25 at ¶¶ 109, 114-15, 131 (first citing Dep't of the Army, Environmental Protection and Enhancement, Army Regulation 200-1, Ch. 6-4(c)(3) (Dec. 13, 2007)); and then citing 32 C.F.R. § 651.47(a), (d)(2), (d)(5), (e)).  Note that Dot Lake inadvertently cites Chapter 6-1(c)(3) of Army Regulation 200-1 instead of 6-4(c)(3).  The Court refers to Chapter 6-4(c)(3) for the remainder of this order.

[51] Docket 25 at ¶¶ 110, 116-17, 131 (citing 40 C.F.R. §§ 1500.2(d), 1501.9(b), (c)(1), 1503.1(a)(2)(ii)).  Note that Dot Lake inadvertently cites § 1503(2)(ii) instead of § 1503.1(a)(2)(ii).  The Court refers to § 1503.1(a)(2)(ii) for the remainder of this order.

[52] Docket 25 at ¶¶ 112-13, 131 (citing Dep't of the Army, U.S. Army Corps of Eng'rs, Tribal Consultation Policy (2012)).

[53] Docket 23 at 17-18; see also Docket 34-1 at 16 n.5.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 12 of 23

Nation Relationships for its commitment to tribal consultation and its directive to each agency to submit "a detailed plan of actions the agency will take to implement the policies and directives of Executive Order 13175."[54]  Executive Order 13175 directs federal agencies to formulate "an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications."[55]

Peak Gold asserts that Dot Lake's "citations to a presidential memorandum and executive order fail to establish a trust duty upon which a consultation claim could be based."[56]  First, Peak Gold contends that "neither of these authorities is a treaty, statute, or regulation upon which a trust obligation may be established."[57]  And second, Peak Gold points to language in both authorities that expressly disclaims the creation of a substantive right.[58]  Dot Lake does not respond to these arguments.[59]

---

[54] Docket 25 at ¶¶ 107-08; Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships, 86 Fed. Reg. at 7491.

[55] Docket 25 at ¶ 108; Exec. Order No. 13175, 65 Fed. Reg. at 67250.

[56] Docket 34-1 at 13.

[57] Docket 34-1 at 14 (emphasis omitted) (citing *Arizona v. Navajo Nation*, 599 U.S. 555, 568 (2023)).

[58] Docket 34-1 at 14-15 (first citing Exec. Order No. 13175, 65 Fed. Reg. at 67252; and then citing Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships, 86 Fed. Reg.  at7492).

[59] *See* Docket 36; Docket 41 at 8.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 13 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 13 of 23

The Court finds that that Dot Lake's citations to the January 26, 2021 President Memorandum and Executive Order 13175 are insufficient to establish a trust duty upon which a consultation claim could be based. While "there is a 'distinctive obligation of trust incumbent upon the Government in its dealings with [Indian tribes],'"[60] "[t]o maintain [a breach of trust claim], the Tribe must establish, among other things, that the text of a treaty, statute, or regulation imposed certain duties on the United States."[61] "[T]he current state of Ninth Circuit caselaw, as it now stands, [is that] unless there is a specific duty that has been placed on the government with respect to Indians, [the government's general trust obligation] is discharged by [the government's] compliance with general regulations and statutes not specifically aimed at protecting Indian tribes."[62] "The Federal Government owes judicially enforceable duties to a tribe 'only to the extent it expressly accepts those responsibilities.' Whether the Government has expressly accepted such obligations 'must train on specific rights-creating or duty-imposing' language in a treaty, statute, or regulation."[63]

---

[60] *Gros Ventre Tribe v. United States*, 469 F.3d 801, 810 (9th Cir. 2006) (alteration in original) (quoting *United States v. Mitchell*, 463 U.S. 206, 225 (1983)).

[61] *Arizona*, 599 U.S. at 563; *see also Gros Ventre Tribe*, 469 F.3d at 810; *but see Vigil v. Andrus*, 667 F.2d 931, 934 (10th Cir. 1982) ("[T]he federal government generally is not obligated to provide particular services or benefits in the absence of a specific provision in a treaty, agreement, *executive order*, or statute." (emphasis added)).

[62] *Gros Ventre Tribe*, 469 F.3d at 810 (third and fourth alterations in original) (citations and internal quotation marks omitted).

[63] *Arizona*, 599 U.S. at 564 (first quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 177 (2011); and then quoting *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 14 of 23

Case 3:24-cv-00137-SLG    Document 47    Filed 07/31/25    Page 14 of 23

Here, neither the January 26, 2021 President Memorandum nor Executive Order 13175 create any rights or impose any duties because both authorities expressly state that they do not create any right or benefit enforceable at law.[64] Therefore, neither authority may form the basis for a failure to consult claim.

## 2. Army Regulations

Dot Lake's First Amended Complaint next cites to Army Regulation 200-1 for its requirement to "[c]onsult with tribal governments before taking actions that affect Federally recognized Indian Tribes."[65] Dot Lake also cites to Department of the Army regulations found in Title 32, Part 651 of the C.F.R. for their directive "to consult with tribal government officials whenever analyzing environmental considerations" in accordance with the April 29, 1994 White House Memorandum on Government to Government Relations with Native American Tribal Governments.[66]

---

[64] *See* Exec. Order No. 13175, 65 Fed. Reg. at 67252 ("This order . . . is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person"); Presidential Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships, 86 Fed. Reg. at 7492 ("This memorandum is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."); *see also Agdaagux Tribe of King Cove v. Jewell*, Case No. 3:14-cv-0110-HRH, 2014 WL 12513891, at *8 (D. Alaska Dec. 19, 2014) ("[P]laintiffs identify two Executive Orders . . . as the sources of the asserted trust obligation. Plaintiffs' reliance on the Executive Orders is misplaced as both orders expressly disclaim the creation of any enforceable rights or benefits.").

[65] Docket 25 at ¶¶ 109, 131 (quoting Dep't of the Army, Environmental Protection and Enhancement, Army Regulation 200-1, Ch. 6-4(c)(3) (Dec. 13, 2007)).

[66] Docket 25 at ¶¶ 114-15, 131 (citing 32 C.F.R. § 651.47(a), (d)(2), (d)(5), (e)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 15 of 23

Case 3:24-cv-00137-SLG    Document 47    Filed 07/31/25    Page 15 of 23

In its Motion to Dismiss, Peak Gold asserts that the "Department of the Army Regulations cited by the Tribe do not apply to the Corps," quoting language from both Army Regulation 200-1 and the introduction to Title 32, Part 65 of the C.F.R. expressly providing that the regulations do not apply to civil works functions of the Corps.[67]  Moreover, Peak Gold contends that the regulations do not apply to the alleged facts of the case because 32 C.F.R. § 651.47 requires public involvement for an EIS but not for the EA published here, and 32 C.F.R. § 651.47(d)(2) only applies when tribal officials' "official duties include responsibility for activities or components of the affected environment related to the proposed Army action," which Peak Gold contends is inapplicable here.[68]  Peak Gold maintains that the remaining sections cited by Dot Lake do not contain language specific to a tribal trust duty.[69]

In its opposition, Dot Lake states that "[w]hile Army Regulation 200-1 may not directly apply to civil works programs, the language of the regulation echoes

---

[67] Docket 34-1 at 16-17 & n.7 (first quoting 32 C.F.R. § 651.1(e); and then quoting Summary of Change, Army Regulation 200-1, Environmental Protection and Enhancement, at i (Dec. 27, 2007), https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r200_1.pdf)).

[68] Docket 34-1 at 17-18 (first citing 32 C.F.R. § 651.47(a); and then quoting 32 C.F.R. § 651.47(d)(2)).

[69] Docket 34-1 at 17-18 (first citing 32 C.F.R. § 651.47(e) (outlining the Department of the Army's general procedures and processes for soliciting public involvement); and then quoting 32 C.F.R. § 651.47(d)(5) (requiring consultation with "[m]embers of identifiable population segments within the potentially affected environments," including "minority communities[,] disadvantaged communities, and tribal governments")).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 16 of 23

Case 3:24-cv-00137-SLG    Document 47    Filed 07/31/25    Page 16 of 23

the language in the Corps' October 4, 2012 Tribal Consultation Policy."[70]  The Tribe does not otherwise respond to Peak Gold's arguments.[71]

Peak Gold replies that the "Tribe's argument [that the language of Regulation 200-1 echoes the 2012 Corps policy] is self-defeating because this Court has already found that the 2012 Policy 'lacks the force and effect of law'" and accordingly cannot serve as the basis for the claim."[72]

The Court finds that Army Regulation 200-1 and the Department of the Army Regulations found in Title 32, Part 651 of the C.F.R. do not establish a trust duty upon which a consultation claim regarding the Corps can be based, as both Army Regulation 200-1 and the introduction to Title 32, Part 651 of the C.F.R. expressly state that the regulations do "not apply to civil works (CW) functions under the jurisdiction of the U.S. Army Corps of Engineers."[73]  The April 29, 1994 White House Memorandum on Government to Government Relations with Native American Tribal Governments, which is incorporated by both Army Regulation 200-1 and 32 C.F.R. § 651.47, likewise does not impose an enforceable duty because it expressly states that it "does not[] create any right to administrative or judicial review, or any other right or benefit or trust responsibility, substantive or

---

[70] Docket 36 at 10.

[71] *See* Docket 36.

[72] Docket 41 at 8 (quoting Docket 23 at 17).

[73] Dep't of the Army, Environmental Protection and Enhancement, Army Regulation 200-1, i (Dec. 13, 2007)); 32 C.F.R. § 651.1(e) ("This part [651] . . . does not apply to Civil Works functions of the US Army Corps of Engineers . . . .").

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 17 of 23

procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person."[74]

### 3. CEQ NEPA Regulations

In its First Amended Complaint, Dot Lake also cites to various CEQ regulations implementing NEPA that require tribal consultation—40 C.F.R. §§ 1500.2(d), 1501.9(b), (c)(1), 1503.1(a)(2)(ii).[75]   40 C.F.R. §1500.2(d) directs federal agencies to "[e]ncourage and facilitate public engagement . . . with communities such as those with environmental justice concerns."  According to Dot Lake, "[t]he Tribe is a community with environmental justice concerns, and the Corps failed its obligation to consult with the Tribe about its concerns."[76]  Dot Lake cites 40 C.F.R. § 1501.9 for its requirement that agencies "consult with tribes early in the planning process."[77]   And 40 C.F.R. § 1503.1(a)(2)(ii) mandates that an agency "[r]equest the comments of . . . State, Tribal, or local governments that may be affected by the proposed action" "[a]fter preparing a draft environmental impact statement and before preparing a final environmental impact statement."

---

[74] Memorandum of April 29, 1994, Government-to-Government Relations With Native American Tribal Governments, 59 Fed. Reg. 22951, 22952 (May 4, 1994); *see Arizona*, 599 U.S. at 563 ("The Federal Government owes judicially enforceable duties to a tribe 'only to the extent it expressly accepts those responsibilities.' Whether the Government has expressly accepted such obligations 'must train on specific rights-creating or duty-imposing' language in a treaty, statute, or regulation." (citations omitted)).

[75] Docket 25 at ¶¶ 110, 116-17, 131.

[76] Docket 25 at ¶ 116.

[77] Docket 25 at ¶ 110.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 18 of 23

In its Motion to Dismiss, Peak Gold contends that "[t]he CEQ NEPA regulations cited by the Tribe do not establish a specific trust obligation upon which to base a consultation claim."[78] First, Peak Gold notes that the regulations were rescinded in 2025.[79] Next, Peak Gold maintains that "some of the cited regulations are facially inapplicable given the alleged facts."[80] For example, Peak Gold alleges that 40 C.F.R. § 1503.1(a)(2)(ii) is not applicable because it applies to an agency's preparation of a final EIS after preparing a draft EIS; here, by contrast, the Corps prepared an EA.[81] Next, Peak Gold maintains that two of the NEPA regulations—40 C.F.R. § 1501.9(b) and 40 C.F.R. § 1500.2(d)—do not explicitly apply to tribes, and therefore fall short of the "'specific rights-creating or duty-imposing' language that could constitute an explicit trust duty," and further notes that "40 C.F.R. § 1500.2(d) was not in effect when the Corps issued the Permit in 2022."[82] Finally, Peak Gold states that 40 C.F.R. § 1501.9(c)(1), which calls on federal agencies to "[i]nvite the participation of any likely affected Federal, State, Tribal, and local agencies and governments," "does not single out tribal governments but merely recognizes that they are stakeholders on the same footing as Federal, State, and

---

[78] Docket 34-1 at 19.

[79] Docket 34-1 at 19 n.8 (citing Council on Environmental Quality, Removal of National Environmental Policy Act Implementing Regulations, 90 Fed. Reg. 10610 (Feb. 25, 2025)).

[80] Docket 34-1 at 19.

[81] Docket 34-1 at 20 (citing Docket 25 at ¶¶ 96, 117, 131).

[82] Docket 34-1 at 20-21 & n.10 (first quoting *Arizona*, 599 U.S. at 564; and then citing Council on Environmental Quality, Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43304, 43317 (July 16, 2020)).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 19 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 19 of 23

local government entities. Thus, it does not establish a separate trust duty beyond the Corps' ordinary NEPA obligations."[83]

In its opposition, the Tribe maintains that "[t]he CEQ regulations were in effect at the time of the Corps' decision, and those regulations guide the Court's review of the Corps' acts and omissions."[84]  The Tribe also references the Corps' NEPA implementation regulations at Title 33, Part 230 of the C.F.R.[85]  The Tribe cites *Confederated Tribes & Bands of Yakima Indian Nation v. Federal Energy Regulatory Commission* and *Coyote Valley Band of Pomo Indians v. United States Department of Transportation* for the proposition that "[c]onsultation is an affirmative duty."[86]

In its reply, Peak Gold contends that the Tribe's continued citation to "generic NEPA regulations . . . does nothing to refute Peak Gold's authorities holding that a generally applicable legal duty cannot serve as the basis for a claim of breach of a specific trust obligation."[87]  According to Peak Gold, the Tribe's citations to *Confederated Tribes & Bands of Yakima Indian Nation* and *Coyote Valley Band of Pomo Indians* "fare no better" because "[t]hose cases involve

---

[83] Docket 34-1 at 21 (citing *El Paso Nat. Gas Co. v. United States,* 750 F.3d 863, 899 (D.C. Cir. 2014)).

[84] Docket 36 at 9 (citing *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 879 (9th Cir. 2022)).

[85] Docket 36 at 10 (citing 33 C.F.R. § 230.1).

[86] Docket 36 at 11 (first citing 746 F.2d 466 (9th Cir. 1984); and then citing Case No. 15-cv-04987-JSW, 2018 WL 1569714 (N.D. Cal. Mar. 30, 2018)).

[87] Docket 41 at 9.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 20 of 23

specific statutory requirements . . . to consult with Tribes not asserted here."[88] Also, "[s]ince the Tribe argues the relevant regulations were the ones in effect at the time of the decision," Peak Gold maintains that the Tribe's citation to the 2024 version of 40 C.F.R. § 1501.9(c) is inapt; the 2020 version—the one in place at the time of the challenged action—"stated only that an agency 'as part of the scoping process' (which is not required for EAs) may hold meetings with affected persons or agencies."[89]

The Court finds that the CEQ NEPA regulations cited by the Tribe do not establish a specific trust obligation that could support a failure to consult claim. In conducting its review, the Court "look[s] to the regulations in place at the time of the challenged decision."[90] Here, the Permit was issued on September 2, 2022,[91] and the Court therefore considers the regulations in place at that time. That the regulations were subsequently rescinded in 2025 is of no import.

Turning first to 40 C.F.R. § 1501.9, Dot Lake cites the version published in 2024, which called on agencies to "[i]nvite the participation of any likely affected Federal, State, Tribal, and local agencies and governments, as early as practicable" during the NEPA process and to "use public and governmental

---

[88] Docket 41 at 9.

[89] Docket 41 at 10 n.5, 11 n.6.

[90] *Env't Def. Ctr.*, 36 F.4th at 879 n.5.

[91] Docket 11-2.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 21 of 23

engagement, as appropriate, to inform the level of review for and scope of analysis of a proposed action."[92]  The version published in 2020, however, which was in place at the time of the challenged action in 2022, required agencies to "invite the participation of likely affected Federal, State, Tribal, and local agencies and governments" "[a]s part of the scoping process."[93]  Scoping is required for an EIS, but is not required for an EA.[94]  Because Federal Defendants did not prepare an EIS for the Project, this section did not mandate consultation with Dot Lake.[95]  40 C.F.R. § 1503.1(a)(2)(ii) requires agencies to request comments from appropriate State, Tribal, and local governments "[a]fter preparing a draft environmental impact statement and before preparing a final environmental impact statement," and likewise does not apply to this Project.  40 C.F.R. § 1500.2(d) was removed from the regulations in 2020 before being reinstated in 2024 and was therefore not in place at the time of the challenged action in 2022.[96]  Moreover, its requirement for agencies to facilitate public engagement, "including meaningful engagement with communities such as those with environmental justice concerns," does not contain the specific, trust-creating duty that is required to support a failure to consult

---

[92] 40 C.F.R. § 1501.9(b), (c)(1) (2024).

[93] 40 C.F.R. § 1501.9(b) (2020).

[94] 43 C.F.R. § 46.235 (2020).

[95] *See* Docket 25 at ¶ 96; Docket 34-1 at 18.

[96] *See* Council on Environmental Quality, Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. at 43317; 40 C.F.R. § 1500.2(d) (2024).

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 22 of 23

claim.[97]    Nor does the Tribe's general reference to the Corps' NEPA implementation regulations in its opposition—without pointing to any specific provision related to tribal consultation—provide support for its failure to consult claim.[98]

Because the First Amended Complaint does not identify an adequate source of authority to support the Tribe's failure to consult claim, the Court must dismiss this claim. The Court dismisses the failure to consult claim with prejudice and without leave to amend given the Tribe's "repeated failure" to cure this deficiency.[99]

## CONCLUSION

For the foregoing reasons, Peak Gold's Motion to Dismiss Claim Two of Plaintiff's Amended Complaint at Docket 34 is **GRANTED**. The Tribe's second claim for relief related to Federal Defendants' failure to consult is **DISMISSED with prejudice and without leave to amend.**

DATED this 31st day of July, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[97] *See Jicarilla Apache Nation*, 564 U.S. at 177 (holding that a tribe must "identify a specific, applicable, trust-creating statute or regulation that the Government violated" and that "[t]he Government assumes Indian trust responsibilities only to the extent it expressly accepts those responsibilities" (internal quotation marks and citations omitted)).

[98] *See* Docket 36 at 10 (citing 33 C.F.R. § 230.1).

[99] *Foman*, 371 U.S. at 182.

Case No. 3:24-cv-00137-SLG, *Village of Dot Lake v. U.S. Army Corps of Engineers, et al.*
Order on Motion to Dismiss Claim Two of Plaintiff's Amended Complaint
Page 23 of 23

Case 3:24-cv-00137-SLG     Document 47     Filed 07/31/25     Page 23 of 23